In the Matter of WILLIAM H. DOUGLAS, Appellant, *v.* THE
BOARD OF SUPERVISORS OF THE COUNTY OF WESTCHESTER,
Respondent.

TAX — ILLEGAL ASSESSMENT IN WESTCHESTER COUNTY — LAND CAN-
NOT BE REASSESSED WITHOUT NOTICE. An assessment of real estate
located in Westchester county, which has been declared illegal by the
Supreme Court and ordered stricken from the roll because the name
of the non-resident owner had been placed in the first column of the
roll among the names of residents, is not an unpaid tax within the mean-
ing of section 3 of chapter 610 of the Laws of 1874, as amended by chap-
ter 193 of the Laws of 1877, authorizing the town board to "examine
the account of unpaid taxes" returned to the supervisor by the collector,
and, after adding certain percentages, to "reject all taxes on land so
imperfectly described or so erroneously assessed that the collection thereof
cannot be legally enforced," and authorizing a reassessment by the board
of supervisors at their next annual meeting, since the assessment, having
been stricken from the roll by a decree of the court, there was no "unpaid
tax" to be returned by the collector or presented by the supervisor to the
board, and under such circumstances a so-called reassessment must be
regarded as a new and original assessment which cannot be properly made
without notice to the landowner.

*Matter of Douglas* v. *Bd. of Supervisors*, 68 App. Div. 296, reversed.

(Argued October 6, 1902; decided November 11, 1902.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the second judicial department, entered
January 29, 1902, which affirmed an order of the Westchester
County Court denying a motion for an order directing the
refund to the petitioner of a tax alleged to have been illegally
assessed upon his property.

This was a proceeding to compel the board of supervisors
of Westchester county to refund a tax alleged to have been
illegally assessed upon certain property of the appellant. He
applied to the County Court for the usual order under the
County Law and in his affidavit set forth the following facts,
none of which were denied by the respondent. The appel-
lant is a resident of the city of New York, but owns thirty-
oné acres of land situate in the town of Mount Pleasant,

county of Westchester. In 1898 the assessors fixed the valuation of this land at the sum of $38,250, but placed the name of the owner in the first column of the roll among the names of residents, thus attempting to make the tax a personal charge against him. At the proper time he appeared before the assessors and insisted that the assessment was illegal as well as excessive, but they refused to vacate or reduce the same. Subsequently, upon his application, a writ of certiorari was issued, and after a hearing said assessment was adjudged illegal and it was ordered that the same should be struck from the assessment roll. In August, 1899, the assessors undertook to reassess the same tax, but upon the appellant's application they struck the reassessment from the roll. On the 13th of February, 1900, the board of supervisors attempted to reassess said lands for the unpaid taxes of 1898, including a penalty of $32.79, but no notice was given to the owner and no opportunity was afforded him to be heard. He refused to pay the tax until said real estate was advertised for sale at public auction, when he made the payment, after filing a written protest stating that it was under compulsion and in order to prevent a sale of his property. Subsequently he applied to the board of supervisors to have the amount of the taxes thus paid refunded to him, but the board refused to grant him any relief. Thereupon he applied to the County Court of Westchester county upon an affidavit setting forth the foregoing facts, among others, for an order compelling the board to refund the amount of said payment, but his motion was denied, without costs. He appealed to the Appellate Division, where the order denying his application was unanimously affirmed, and he then came here.

*Andrew J. Shipman* and *Clarence S. Davison* for appellant. Taxation for public purposes is a conceded power of government, but it must be enforced strictly according to law, or it becomes the most obnoxious means of confiscation. (*Hubbell* v. *Welden*, Hill & Denio Supp. 139 ; *Allen* v. *Com. of Land Office*, 38 N. Y. 312; *People ex rel.* v. *Goff*, 52 N.

Y. 434; *Whitney* v. *Thomas*, 23 N. Y. 281; *Stebbins* v. *Kay*, 123 N. Y. 31; *Nat. Bank* v. *City of Elmira*, 53 N. Y. 49.) The tax of 1898 was illegally and improperly assessed and should be refunded. (*Adams* v. *Bd. of Suprs.*, 154 N. Y. 619; *Boyd* v. *Boyd*, 53 App. Div. 152; *Moore* v. *City of Albany*, 98 N. Y. 396; *Whitney* v. *Thomas*, 23 N. Y. 281; *Stebbins* v. *Kay*, 123 N. Y. 31; *Nat. Bank* v. *Elmira*, 53 N. Y. 49; *People ex rel. Oswald* v. *Goff*, 52 N. Y. 434; *Matter of N. Y. C. R. R. Co.*, 90 N. Y. 342; *Prosser* v. *Secor*, 5 Barb. 608; *Weaver* v. *Devendorf*, 3 Den. 117.) The board of supervisors did not comply with the requirements of any law in making this attempted reassessment, and the tax thereby levied is void and illegal. (L. 1896, ch. 908, § 54.) The appellant having paid this tax under protest and compulsion, and having applied to the board of supervisors to refund said tax, which they refused to do, is entitled to an order directing said board to refund the same. (*Matter of Adams*, 154 N. Y. 619; *Matter of Reid*, 52 App. Div. 243; *Bruecher* v. *Port Chester*, 101 N. Y. 240; *Vaughn* v. *Port Chester*, 135 N. Y. 460; *Poth* v. *Mayor, etc.*, 151 N. Y. 17; *Dale* v. *City of New York*, 71 App. Div. 227; *Matter of Gilloren*, 16 Misc. Rep. 130; *Matter of B. G. Co.*, 144 N. Y. 228; *Matter of McCue*, 45 App. Div. 406.)

*J. Addison Young* for respondent. The application in question was addressed to the discretion of the court, and the order appealed from is not reviewable in this court in the absence of a certificate of the court below. (*Merriam* v. *W. & P. L. Co.*, 155 N. Y. 140; *Adams* v. *Bd. of Suprs.*, 154 N. Y. 627.) This court has no power to compel the refunding to petitioner which is sought by this proceeding. (*Harris* v. *Bd. of Suprs.*, 16 Abb. [N. C.] 282; *Matter of Adams* v. *Bd. of Suprs.*, 154 N. Y. 619; *Matter of B. M. G. L. Co.*, 144 N. Y. 232; *Matter of Hermance*, 71 N. Y. 481; *Matter of N. Y. C. Protectory*, 77 N. Y. 342; *Matter of Peek*, 80 Hun, 122; *Matter of Baumgarten*, 39 App. Div. 174; *Matter of Young*, 26 Misc. Rep. 186.)

VANN, J. While the land of the appellant is subject to taxation and should bear its proper proportion of the public burden, unless the reassessment was made in accordance with law, payment of the tax was wrongfully exacted, and the amount thereof should be refunded as required by the County Law (L. 1892, ch. 686, § 16). "The power to levy assessments exists only where it is distinctly conferred by legislative authority." (*Stebbins* v. *Kay*, 123 N. Y. 31, 35.) The authority relied upon to sustain the reassessment under consideration is an act which applies only to the county of Westchester, passed in 1874 and amended in 1877. (L. 1874, ch. 610; L. 1877, ch. 193.) The third section of this act authorizes the town board to "examine the account of unpaid taxes" returned to the supervisor by the collector, and, after adding certain percentages, to "reject all taxes on land so imperfectly described or so erroneously assessed that the collection thereof cannot be legally enforced, and" to "file a transcript thereof in the town clerk's office." The record before us shows that the lands of the appellant were not imperfectly described, although the resolution to reassess recites that as the only ground upon which the reassessment was made. Said section further provides that a copy of said transcript "duly certified by the town clerk, shall be presented by the supervisor of the town to the board of supervisors at their next annual meeting, and said board shall reassess and charge the lands of persons intended to have been assessed for the said rejected taxes with the amount of such tax and percentage thereon, and shall direct the collection thereof with the other taxes of the year in the same manner as such taxes are directed to be collected  *  *  *."

Assuming, but not deciding, that all the preliminaries expressly required by this statute were properly complied with, two questions arise for decision, *first*, whether the assessment of 1898 was an unpaid tax within the meaning of the statute; *second*, whether there could be a valid reassessment without notice of any kind to the landowner.

By a decree of the Supreme Court the assessment of 1898

was not only adjudged illegal, but it was further ordered " that said illegal assessment be and the same is hereby stricken from said assessment roll for the said town of Mount Pleasant for the year 1898." The assessment was illegal and invalid because it attempted to create a debt against the owner without jurisdiction. (*People ex rel. Barnard* v. *Wemple,* 117 N. Y. 77.) After the entry of said decree no assessment against the property in question remained upon the roll for that year, because, by the command of a court of competent jurisdiction, it had been stricken therefrom. Thenceforth in the eye of the law the roll was blank so far as the appellant and his property were concerned, the same as if his name had never been written thereon or a description of his property entered therein. The decree of the Supreme Court wiped out as with a sponge every letter and figure relating to the assessment in question, and thenceforward there was no " unpaid tax " to be returned by the collector or presented by the supervisor to the board. No reassessment as such was possible, because no assessment had been made and there was nothing for the supervisors to act upon. They had nothing before them which the law recognizes as having any substance or existence, and they had no jurisdiction to make a reassessment any more than if no attempt had ever been made to place the property upon the roll. When the court adjudged in effect that there was no assessment against the appellant's property upon the roll, no foundation was left upon which the supervisors could build, and their attempt in that regard had no legal effect as a reassessment. Whatever they did was a new assessment rather than a reassessment and required the same notice as an original assessment.

It expressly appears, however, that no notice of the proposed reassessment was given to the appellant and that no opportunity was given him to be heard in relation thereto. The statute in question contains no express provision for notice to the owner in case a reassessment is proposed, and in this respect it differs from the Tax Law, which provides for a notice of five days before the board of supervisors can make

a "reassessment of property illegally assessed." (L. 1896, ch. 908, § 54.) It is unnecessary to now decide whether reasonable notice, if actually given, would have been sufficient, even if the statute contains no express provision to that effect, for in this case no notice whatever was given or attempted, either personally, by mail or by advertisement. No grievance day was provided either by the statute or by the board of supervisors. The resolution of reassessment, adopted February 13th, 1900, directed that "said unpaid taxes and interest be levied and assessed upon and collected from said respective lands and premises in the same manner as and together with the taxes of and for the year 1899," yet the grievance day of that year was the third Monday of August, which had passed by more than six months before the board of supervisors took the action complained of. The appellant, therefore, had no opportunity to be heard before the tax was finally imposed upon his property. The assessors never had jurisdiction of his person, because he was a non-resident of the county, and the supervisors could base nothing upon their illegal action. The reassessment, therefore, was made without notice either actual or constructive.

The assessment and collection of a tax without adequate notice to the owner is taking property without due process of law. As Judge Cooley says in his work on Taxation : "Every inhabitant of the state is liable to have a demand established against him on the judgment of others regarding the sum which he should justly and equitably contribute to the public revenues. Every property owner in the state, whether an inhabitant or not, is liable to have a lien in like manner established against his property. Moreover, the persons who make the assessment lighten the burden upon themselves in proportion as they increase it upon others. In such proceedings, therefore, it must be a matter of the utmost importance to the person assessed that he should have some opportunity to be heard before the charge is fully established against him, and it would seem to be a dictate of strict justice that the law should make reasonable provision to secure him

as far as may be against partiality, malice or oppression. * * * We should say that notice of proceedings in such cases and an opportunity for a hearing of some description were matters of constitutional right." (Cooley's Law of Taxation, 265, 266.)

When considering a case involving the right to reassess property, this court said: "The general theory under our laws for taxation of property is that the citizen to be affected must have some sort of notice of the proceeding to be had against his property, and that, in some form, he may be heard, if wrong is apprehended, before any portion of his estate is seized for the support of the government. * * * *" (*Overing* v. *Foote*, 65 N. Y. 263, 269.)

There must be notice in some form, or at least adequate means of knowledge equivalent to notice, such as a general statute presumed to be known to all, or a proper advertisement fixing the time and place for a hearing, before a valid tax can be finally imposed either *in personam* or *in rem*. The taxpayer has an absolute right to be heard before some officer or tribunal authorized to correct errors, and unless this right is afforded any attempt at taxation is neither binding upon him personally nor a charge upon his property. In a recent case we held that where a levy of a tax was void because it was assessed in the name of one who was not the owner or occupant, it could not be cured even by a statute, nor be made a valid lien upon the lands except by proceedings for reassessment, requiring a hearing and notice to the owner or occupant. (*Hagner* v. *Hall*, 10 App. Div. 581; affirmed, on opinion below, 159 N. Y. 552.)

The subject of notice and the necessity for giving it in some form is so thoroughly considered by Judge CULLEN in the case last cited and the authorities are so thoroughly reviewed by him that we regard further discussion as unnecessary. Our conclusion is that the reassessment in question by the board of supervisors was, under the circumstances, a new and original assessment by that board, and that the same could not be made without notice to the landowner.

The order appealed from should, therefore, be reversed, with costs, and the motion to refund granted, with ten dollars costs.

Parker, Ch. J., O'Brien, Bartlett, Haight, Cullen and Werner, JJ., concur.

Ordered accordingly.