The People of the State of New York ex rel. American Exchange National Bank, Appellant, *v.* Lawson Purdy et al., as Commissioners of Taxes and Assessments of the City of New York, Respondents.

Tax — bank may institute certiorari proceedings to review assessment of its capital stock — effect of curative act (L. 1909, ch. 74) permitting correction of assessments in New York city invalid because notices were not given.

A bank may institute a proceeding by certiorari on behalf of its stockholders in relation to the assessment and taxation of its shares of stock.

The period of limitation prescribed by the Tax Law, within which application must be made for the writ of certiorari, is not set in motion until notice is given by posting and publication that the completed tax roll has been filed. The Supreme Court may, however, in the exercise of its discretion, in the case of long delay, dismiss the writ on account of laches.

Payment under the compulsion of a statute making a tax a direct lien upon shares of stock in a bank is an involuntary payment as to stockholders.

Chapter 74 of the Laws of 1909 is curative in part, but, as it also provides for the completion of an imperfect assessment duly commenced under a valid statute but not finished because notice had not been given nor an opportunity to be heard afforded, as required by the Tax Law, to this extent it is in the nature of an act authorizing a reassessment.

The legislature has power to authorize a reassessment, or the completion of an imperfect assessment, by doing something which should have been done before, but was not done in time, or not done at all.

A curative statute acts directly upon a defective assessment and legalizes it without further procedure by the taxing officers. This may legally be done as to such features of the procedure as might have been omitted in the original statute without affecting its validity. When, however, the new act requires something more to be done by the taxing officers and legalizes the assessment, provided those acts are done, it provides for a reassessment, or the completion of the old assessment. Such legislation is valid, provided the original taxing act was valid and the omission sought to be remedied is not jurisdictional, but an irregularity   Hence the act in question is constitutional, both upon principle and authority, except as to one of its provisions.

To the extent that this statute prohibits the court from giving relief in actions or proceedings pending when the act was passed on account of irregularities theretofore existing, it is unconstitutional, because in

effect it legalizes the assessment, even if no opportunity to be heard is given as required by the other provisions of the act. That sentence, however, stands by itself, and is so separated from the rest of the statute in purpose and meaning that it may be eliminated without affecting the validity of the remainder.

Upon consideration of the peculiar situation arising from the passage of the curative act after the commencement of this proceeding and before its determination, *held*, that the matter should be remitted to the Special Term with leave to the respondents to there move for leave to file a supplemental return.

*People ex rel. Am. Ex. Nat. Bank* v. *Purdy*, 132 App. Div. 931, reversed.

(Argued October 4, 1909; decided November 9, 1909.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 28, 1909, which affirmed an order of Special Term dismissing a writ of certiorari to review certain assessments for taxation upon the capital stock of the relator owned by its respective shareholders.

The facts, so far as material, are stated in the opinion.

*J. Culbert Palmer* and *Edwin L. Kalish* for appellant. The act does not deprive the court of power in the premises. (Cooley on Const. Lim. 448; *Gilman* v. *Tucker*, 128 N. Y. 202; *Matter of Trustees of Union College*, 129 N. Y. 315; *Loomis* v. *City of Little Falls*, 176 N. Y. 34; *Downey* v. *Seib*, 185 N. Y. 435; *Cromwell* v. *MacLean*, 123 N. Y. 491; *City of New York* v. *Streeter*, 91 App. Div. 210; *Foster* v. *Foster*, 129 Mass. 561; *Meigs* v. *Roberts*, 162 N. Y. 378; *Sanders* v. *Downs*, 141 N. Y. 426.) The assessment is void and incurable because made without jurisdiction and without due process of law. (*Matter of Douglas* v. *Bd. of Suprs.*, 172 N. Y. 315; *Howell* v. *City of Buffalo*, 37 N. Y. 274; Cooley on Taxation, 228; *People ex rel. B. S. Bank* v. *Feitner*, 191 N. Y. 97; *People* v. *Bd. of Suprs.*, 36 How. Pr. 547; *Trumbull* v. *Palmer*, 104 App. Div. 53; *Stuart* v. *Palmer*, 74 N. Y. 191; *People ex rel. Moller* v. *O'Donnell*, 183 N. Y. 12.) The proceeding was properly instituted by the relator. (*Matter of First Nat. Bank*, 182 N. Y. 462;

*People ex rel. G. N. Bank* v. *Comrs. of Taxes*, 67 N. Y. 516; *People ex rel. T. Nat. Bank* v. *Comrs. of Taxes*, 69 N. Y. 91; *Cummings* v. *Nat. Bank*, 101 U. S. 156.) The proceeding was brought in due time. (*People ex rel. Thomson* v. *Feitner*, 168 N. Y. 447; *People ex rel. R., W. & O. R. R. Co.* v. *Haupt*, 104 N. Y. 381; *People ex rel. R., W. & O. R. R. Co.* v. *Hicks*, 105 N. Y. 202; *People ex rel. W. S. R. R. Co.* v. *Adams*, 125 N. Y. 484.) The fact that the tax was paid before the proceeding was instituted is immaterial. (*Bruecher* v. *Vil. of Port Chester*, 101 N. Y. 240; *Adams* v. *Bd. of Suprs.*, 154 N. Y. 626; *Cummings* v. *Nat. Bank*, 101 U. S. 156; *Æ. Ins. Co.* v. *Mayor, etc.*, 153 N. Y. 333.) The law violates the Constitutions of the United-States and of the state of New York. (U. S. Const. 14th amend.; Const. of N. Y. art. 1, § 6; U. S. R. S. § 5219.)

*Charles F. Brown, Silas B. Brownell, John O. Heald* and *John R. Halsey* for relators in similar pending proceedings, intervening. The act of 1909 is a confirming act only and not a statute for reassessment. (*Hagner* v. *Hall*, 10 App. Div. 581; *Matter of Trustees of Union College*, 129 N. Y. 308.) These assessments cannot be cured by a confirming act. (*City of Rochester* v. *F. W. Assn.*, 183 N. Y. 23; *Wallace* v. *McEchron*, 176 N. Y. 424; *Smith* v. *Buffalo*, 159 N. Y. 427; *Van Deventer* v. *Long Island City*, 139 N. Y. 133; *Matter of Trustees of Union College*, 129 N. Y. 308; *Cromwell* v. *MacLean*, 123 N. Y. 474; *People ex rel. B. S. Bank* v. *Feitner*, 191 N. Y. 88.) The provisions in the act of 1909 for hearing and correction of the assessments after they had been made is insufficient to cure the vice in the method of making them. (*People ex rel. B. S. Bank* v. *Feitner*, 120 App. Div. 838.) The provision in the act of 1909 that no court or other tribunal should have the power to grant relief against the illegality of the assessments on account of any irregularity, either in pending or subsequent proceedings, is unconstitutional in so far as it applies to irregularities that are not cured by the act of confirmation. (*Wallace* v.

*McEchron,* 176 N. Y. 424; *Matter of Trustees of Union College,* 129 N. Y. 308.)

*Benjamin G. Paskus* and *Herman Goldman* for relators in similar pending proceedings, intervening.    Chapter 74 of the Laws of 1909 is a curative act; it is not an act providing for a reassessment. (*Spencer* v. *Merchant,* 100 N. Y. 585; *Stuart* v. *Palmer,* 74 N. Y. 183.)    The defects in the assessments in question were jurisdictional and, therefore, it was not within the power of the legislature to cure them. (*Ensign* v. *Barse,* 107 N. Y. 329; *Stuart* v. *Palmer,* 74 N. Y. 183; Gray's Lim. on Taxing Power, §§ 1247, 1252; *Cromwell* v. *MacLean,* 123 N. Y. 490; *Stuart* v. *Palmer,* 74 N. Y. 190; *Jewell* v. *Van Steenburgh,* 58 N. Y. 85; *People* v. *Turner,* 145 N. Y. 451; *Trumbull* v. *Palmer,* 104 App. Div. 51; *Matter of Douglas* v. *Bd. Suprs.,* 172 N. Y. 315; *Hagner* v. *Hall,* 10 App. Div. 581; 159 N. Y. 552.)    The curative act (L. 1909, ch. 74) is unconstitutional for the further reason that it attempts to give notice and a hearing after final imposition of the tax. (*People* v. *Turner,* 117 N. Y. 238; *Stuart* v. *Palmer,* 74 N. Y. 183; *Trumbull* v. *Palmer,* 104 App. Div. 51.)

*Francis K. Pendleton, Corporation Counsel* ( *William H. King* of counsel), for respondents.    As chapter 74 of the Laws of 1909 provided for notice and hearing, and it was within the power of the legislature in the first instance to prescribe for notice and hearing after the assessments were made and the tax collected, the act is a bar to the cancellation of any assessment made without prior notice and hearing. ( *Williams* v. *Supervisors of Albany,* 21 Fed. Rep. 99; 122 U. S. 154; *Cromwell* v. *MacLean,* 123 N. Y. 474; *Terrel* v. *Wheeler,* 123 N. Y. 76; *People* v. *Turner,* 117 N. Y. 227; *Ensign* v. *Barse,* 107 N. Y. 329; Cooley on Taxn. [3d ed.] 633; *Hagner* v. *Hall,* 10 App. Div. 581; *People* v. *Wemple,* 117 N. Y. 85; *Spencer* v. *Merchant,* 100 N. Y. 585; 125 U. S. 345.)    Chapter 74 of the Laws of 1909 properly applies to pending proceedings,

and hence is a bar in these proceedings to a cancellation of the assessments for any prior failure to give notice and hearing. (*People ex rel. Kilmer* v. *McDonald,* 69 N. Y. 362; *Town of Duanesburgh* v. *Jenkins,* 57 N. Y. 177; *Tifft* v. *City of Buffalo,* 82 N. Y. 204; 1 Cooley on Taxn. [3d ed.] 512; *Cowgill* v. *Long,* 15 Ill. 202; *State* v. *Squires,* 26 Iowa, 340; *Dittoe* v. *City of Davenport,* 74 Iowa, 66; *City of Clinton* v. *Wallicker,* 96 Iowa, 655; *State* v. *Norwood,* 12 Md. 195; *Miller* v. *Graham,* 17 Ohio St. 1; *State* v. *Apgar,* 31 N. J. L. 358.) The bank had no authority under the Tax Law to institute the proceeding, because the assessments sought to be canceled were made, not upon the bank, but against the shareholders upon their shares of stock, and the proceeding was not brought in behalf of the shareholders assessed. (*O. Nat. Bank* v. *Owensboro,* 173 U. S. 669; *People ex rel. M. Nat. Bank* v. *Coleman,* 41 Hun, 344; *People ex rel. Blakeslee* v. *Comrs.,* 135 N. Y. 447; *People ex rel. Kohler* v. *Feitner,* 71 App. Div. 572.)

Vann, J. By this proceeding the relator, a national banking association, seeks to set aside an assessment made upon the stock of its shareholders for the year 1907 by the board of taxes and assessments of the city of New York. The method of assessment and the entire procedure were substantially the same as was pursued in the case of *People ex rel. Bridgeport Savings Bank* v. *Feitner* (191 N. Y. 88), recently decided by us. We there held that the statute, under which the assessment was levied in that case as well as in this, was valid, but as the notice and opportunity to be heard required thereby were not given, the assessment was voidable for that reason and for that reason only. We distinctly announced that while we held the statute valid we were compelled "on account of the irregularity in failing to give notice, to reverse the orders of the Appellate Division and of the Special Term and to cancel the assessment against the relator." In other words, we upheld the Tax Law so far as it applied to that case as constitutional, but reversed the action of the taxing officers on

1909.]  People ex rel. Am. Ex. Nat. Bank *v.* Purdy.  **275**

N. Y. Rep.]  Opinion of the Court, per Vann, J.

account of their failure to give notice, which we held upon authority was merely an irregularity. Our decision in that case was handed down on the last day of January, 1908, and the writ to review the assessment involved in this case was issued on the 11th of April in the same year, but the final order of the Special Term sustaining the assessment was not made until the 5th of April, 1909. In the meantime an act, claimed to be curative in its effect, was passed, known as chapter 74 of the Laws of 1909, and although the proceeding herein had been previously submitted to the Special Term for decision, as it was undecided on the 27th of February when that law took effect, a rehearing was granted so that the effect of the new statute might be considered. After due consideration, the Special Term held the statute a bar to this proceeding, which was dismissed, without costs, and upon appeal to the Appellate Division the order was affirmed, one of the justices dissenting. The relator now comes before us, and the main question presented by its appeal is the validity and effect of the statute, which, for convenience at least, we shall call the curative act.

Several preliminary questions should be considered before the main controversy is passed upon.

1. Had the relator the right to institute this proceeding in its own name, or should it have been commenced by some shareholder claiming to be aggrieved?

We do not regard this question as open. (*Matter of First National Bank of Ossining*, 182 N. Y. 460, 462.) In the case cited the proceeding was commenced by the bank alone, no shareholder having joined therein, and it was contended, both at Special Term and in this court, that the relator was not injured by the assessments because they were not made against it or its property but against the shareholders upon their shares of stock. Judge Gray, speaking for all the judges, answered this contention as follows: "That the bank was aggrieved, within the meaning of section 250 of the Tax Law, and, therefore, was entitled to sue out the writ of certiorari is, in my opinion, beyond question. The Tax Law makes the bank the

agent for the collection of the tax and subjects it to a penalty
for failure to pay over the same to the county treasurer, or,
in the city of New York, to the receiver of taxes. The rep-
resentative capacity of a bank to maintain a suit in behalf of
its stockholders, in relation to the assessment and taxation of
its shares of stock, was sufficiently declared in the recent case
of *Mercantile National Bank* v. *Mayor, etc., of New York*
(172 N. Y. 35, 45), and it can, undoubtedly, institute such a
proceeding as this. Such was the procedure as far back as
the case of *People ex rel. Gallatin National Bank* v.
*Commissioners of Taxes* (67 N Y. 516)."

While the writ in that case was dismissed at the Special
Term and the Appellate Division affirmed, we decided that
" as there was no ground for the dismissal of the writ, except
that the determination of the board of assessors was correct,
the order should be amended so as to read that it affirms the
proceedings of the board of assessors and dismisses the writ
of certiorari." The language of Judge GRAY, therefore,
was not, as the respondents contend, the mere expression
of his own opinion, for, as the proceedings were affirmed,
the point was necessarily involved and decided.

2. Was the proceeding brought within the period prescribed
by law ?

The statute authorizing the writ provides that the applica-
tion therefor must be made " within fifteen days after the
completion and filing of the assessment roll and the first post-
ing or publication of the notice thereof as required by " the
Tax Law. (§ 251.) It is further provided that the com-
pleted roll shall be filed by a date named and notice given by
posting and publication that it has been so filed and is open to
public inspection. (Id. § 38.) One object of the notice is to
set in motion the period of fifteen days so that it will begin
to run, and as no notice was given in the case before us, the
period of limitation prescribed by section 251 had not expired
when application was made for the writ. (*People ex rel.
Rome, Watertown & Ogdensburgh Railroad Co.* v. *Haupt,*
104 N. Y. 377, 381.) In thus holding that there was no

limitation as matter of law, we do not wish to intimate that the Supreme Court might not well, in the exercise of its discretion, when there has been long delay in applying for the writ, dismiss it on account of laches. In this proceeding, however, the writ was dismissed because the curative act was regarded as a bar.

3. Was payment of the taxes without protest before the writ was issued a bar to the proceeding?

The taxes in question, amounting to the sum of $96,000, were paid by the relator without objection on the 31st of December, 1907, and this proceeding was instituted on the 11th of April, 1908. The statute commands every bank to pay the taxes assessed upon the shares of its stockholders from the fund devoted to dividends, and imposes a penalty in case of failure. The tax is not only made a lien on the shares until it is paid, but it is expressly provided that "if the stock is transferred it shall be subject to such lien." (Tax Law, § 72.) Some of the stockholders of the relator were not satisfied with such payment of the taxes on their shares, for the return shows that twenty-three instituted proceedings to review, which are now pending. We have held, under circumstances quite analogous to those in this case, that payment under the compulsion of a statute making the tax a direct lien upon shares of stock in a banking association is an involuntary payment as to stockholders. (*Ætna Ins. Co.* v. *Mayor, etc., of New York*, 153 N. Y. 331, 341.) As the bank can institute a proceeding for the benefit of its stockholders in order to avoid a multiplicity of proceedings, and as the tax is made a lien upon the shares of stock which follows them into the market, we think the payment should be held involuntary, so that the stockholders may derive the same advantage from the review at the instance of the bank as if each one of the thirteen hundred stockholders of the relator had instituted a separate proceeding at great expense to themselves and with unnecessary sacrifice of the time of the courts. The peculiar circumstances make the payment in question an exception to the general rule.

278    People ex rel. Am. Ex. Nat. Bank *v.* Purdy.    [Nov.,

Opinion of the Court, per Vann, J.    [Vol. 196.

We now reach the question whether the curative act is constitutional and if it is, what effect it had upon the assessment in question.

That act empowers the board of taxation and assessment of the city of New York to cancel or reduce assessments for taxation of the shares of stock of banks or banking associations in that city made by such board for the years 1901 to 1907, inclusive. It provides that said assessments shall be open to public inspection at a place named, during the period "beginning twenty days after the passage" of the act and ending on the 31st of October, 1909 ; that an application for reduction or cancellation may be made to the board at its office on or before September 1st, 1909, by any person deeming himself aggrieved, who is to be granted a hearing if he so requests ; that on or before October 1st, 1909, every application shall be determined by the board, which is required to declare its determination by cancellation or reduction on the assessment rolls when necessary. Review by certiorari is authorized provided the writ is applied for within a period named. (L. 1909, ch. 74, § 1.)

The second section provides that all such assessments "as to which no application for relief shall be made    *    *    * shall be and hereby are ratified and confirmed ; and every determination by said board as herein provided, upon an application seasonably made for relief under this act, shall be final and conclusive, unless reversed or modified by the court in a certiorari proceeding thereafter brought as herein provided."

By the third section the board is required to certify their determination to the comptroller, "who shall thereupon correct or cause to be corrected the assessment and tax in the records or tax books of the city of New York in accordance with the determination of the said board, and if the tax based on such assessment has been paid a refund shall be made by the comptroller in the same manner as provided in the Tax Law where a final order in a certiorari proceeding directs the cancellation or reduction of an assessment for taxation."

Section four makes provision for notice as follows: "Beginning within twenty days after the passage of this act the said board shall publish a notice subscribed by them" in the official newspapers "for three weeks * * * that, pursuant to the provisions of this act, the said assessments will be open to public inspection, beginning twenty days after the passage of this act, and until October thirty-one, 1909, in the office of said board * * * and that application for reduction or cancellation of said assessments may be made to said board at its said office, in writing, on or before September one, 1909, specifying the grounds therefor, by any person deeming himself aggrieved by said assessments, and that upon such application a hearing, if requested, will be granted by said board or by a member or members thereof. No other or further notice of the provisions of this act shall be required to be given."

The act was passed to relieve the situation resulting from our decision in the case of *People ex rel. Bridgeport Savings Bank* v. *Feitner* (191 N. Y. 88) and should be read in connection therewith. The statute is curative in part, but, as it also provides for the completion of an imperfect assessment, duly commenced under a valid statute but not finished because notice had not been given nor an opportunity to be heard afforded, as required by the Tax Law, to this extent it is in the nature of an act authorizing a re-assessment. The object of the statute was to lay hold of assessments commenced several years before the act was passed and to authorize their completion by doing what had not been done, although required by law. It provides for a notice to be given and a hearing to be had in the place of those omitted, owing to a misunderstanding of the statute governing the procedure. Any person deeming himself aggrieved by the tentative assessment is given ample opportunity to make complaint, to have it duly heard and determined, and to credit or restitution if the tax has been paid and the assessment is reduced or canceled. All persons who make no complaint pursuant to the opportunity afforded, are concluded, the same as they would have been if the oppor-

tunity had been duly given as required by the Tax Law. On account of the irregularity in failing to afford an opportunity to be heard, we were compelled to reverse in the *Bridgeport Savings Bank* case and the legislature sought to remedy the omission by providing that an opportunity to be heard might still be given and the tax completed, even at a late day, by proceedings which should have been taken in the first instance.

This act is analogous in principle and similar in method of procedure to one passed April 30th, 1883, which was held valid by the Supreme Court of the United States. (*Williams* v. *Supervisors of Albany*, 122 U. S. 154; L. 1883, ch. 345.)

In that case it appeared that in the years 1876, 1877 and 1878 the assessors of the city of Albany in assessing shares of bank stock failed to make the assessment in each of those years until after the first of September, which was too late to give the notice and the opportunity to be heard according to the statute then in force. The act of 1883 provided that the notice and opportunity might still be given, and confirmed the assessments subject to the right of the shareholders to ask for a cancellation or reduction after the notice and opportunity, thus authorized, had been given, and directed restitution when the tax had been paid, of the principal and interest of any sum deducted on the complaint of a person aggrieved. This was the second attempt of the legislature to remedy the evil, the first (L. 1881, ch. 271) having failed because the legislature itself sought to make the assessments without providing for an opportunity to be heard (*Albany City Nat. Bank* v. *Maher*, 9 Fed. Rep. 884.)

It was strenuously contended by able counsel that the second statute also was invalid for many reasons and especially because the defects in the assessments were such as could not be legalized even if the tax had not been collected, and because the legislature had no power by a curative act to authorize a completion of the assessments after the period had expired within which, according to the original statute, they might have been made.

Mr. Justice FIELD, speaking for all the justices, said : " The irregularities in the assessment for the years 1876, 1877, and 1878, in that no entry of any assessment of the shares of the plaintiff and of the stockholders whose claims were assigned to him was made on the assessment roll of those years until after the first of September, and after the time for revising and correcting the assessment had passed, and in the defect of the oath annexed in its averment as to the estimate of the value of real estate, were, in our judgment, cured by the validating act of April 30, 1883. The power of taxation vested in the legislature is, with some exceptions, limited only by constitutional provisions designed to secure equality and uniformity in the assessment. The mode in which the property shall be appraised, by whom its appraisement shall be made, the time within which it shall be done, what certificate of their action shall be furnished, and when parties shall be heard for the correction of errors, are matters resting in its discretion. Where directions upon the subject might originally have been dispensed with, or executed at another time, irregularities arising from neglect to follow them may be remedied by the legislature, unless its action in this respect is restrained by constitutional provisions prohibiting retrospective legislation. It is only necessary, therefore, in any case to consider whether the assessment could have been ordered originally without requiring the proceedings, the omission or defective performance of which is complained of, or without requiring them within the time designated. * * * But it is not perceived why it (the assessment) might not be legalized and confirmed by the legislature giving to them (the taxpayers) such opportunity after the time originally designated had expired. No just right of the taxpayers would thereby be defeated. * * * It is difficult to see on what plausible ground the validity of this act can be questioned, unless the power of the legislature to cure by legislative act any irregularities of the assessment be denied. Every right of the shareholder who had paid taxes on the assessment, and it does not appear that there

were any others, was secured. He could present any claim he might have for a reduction or cancellation of the assessment, and be heard respecting it. He occupied the same position he would have held, if the assessment of his shares had been placed on the assessment roll within the time required — that is, before the first of September — and the oath annexed had been without any fault or omission in its averments. The plaintiff and the other shareholders were bound, as owners of property, to bear their just proportion of the public burdens, and if, in ascertaining what that proportion should be, some steps in the proceeding were omitted which invalidated the assessment, it would seem but just that the defect should be cured, if practicable, and the shareholders not be allowed to escape taxation, and thus entail the burden they should bear upon other taxpayers of the community." (p. 163.)

The case was fully discussed by Judge Wallace when it was before the United States Circuit Court. His answer to the objection that the taxpayers were not given an opportunity to be heard until after they were compelled to pay the taxes was in part as follows: " The general rule has often been declared that the legislature may validate, retrospectively, any proceedings which they might have authorized in advance. And it is immaterial that such legislation may operate to divest an individual of a right of action existing in his favor, or subject him to a liability which did not exist originally. In a large class of cases this is the paramount object of such legislation. If, therefore, it was within the competency of the legislature to provide for the collection of a tax by a system which requires the taxpayers to pay in advance of an opportunity to be heard, but which permits them to have a subsequent hearing and to obtain restitution, if restitution ought to be made, the validating act was constitutional. * * * In judicial proceedings due process of law requires a hearing before condemnation and judgment before dispossession ; but when property is appropriated to the public use under the power of eminent domain or under

1909.]    People ex rel. Am. Ex. Nat. Bank v. Purdy.    283

N. Y. Rep.]        Opinion of the Court, per Vann, J.

the power of taxation, different considerations from those which prevail in controversies between individuals obtain. Thus, when property is taken under the power of eminent domain by the state, or by municipal corporations by state authority, the adjudications sanction the validity of laws which permit the property of the citizen to be appropriated before a hearing and before compensation. It is sufficient if provision is made by the law by which the party can obtain compensation and for a hearing before an impartial tribunal to award the compensation. * * * There seems to be no reason for a different rule when the money of the taxpayer is appropriated by the sovereign power under the right of taxation. * * * The operation of the present act is to preserve, substantially, to the taxpayers the right of which they were originally deprived, to give them an opportunity to question the justice of the assessment and to restore to them the sums which were illegally collected of them. In view of the large and almost unlimited discretion which resides in the legislature to regulate the mode and conditions of taxation, it is believed to be valid and effectual to legalize the proceedings here." ( *Williams* v. *Board of Supervisors of the County of Albany*, 21 Fed. Rep. 99.)

We have quoted at such great length from these opinions because the *Williams* case applies so directly to the case in hand that we regard it as controlling. It was relied upon by this court in *Terrel* v. *Wheeler* (123 N. Y. 76), where we sustained a curative act passed to relieve the city of Brooklyn from the alarming situation that followed our decision in the *Brevoort* case. ( *Brevoort* v. *City of Brooklyn*, 89 N. Y. 128; L. 1882, ch. 363.) It has frequently been cited and never disapproved so far as we have been able to discover. We add a few citations, none so directly in point, but all tending to uphold the power of the legislature to authorize a reassessment, or the completion of an imperfect assessment by doing something which should have been done before, but was not done in time, or not done at all. ( *Matter of Van Antwerp*, 56 N. Y. 261; *Spencer* v. *Merchant*, 100 N. Y. 585;

*S. C.*, 125 U. S. 345 ; *Ensign* v. *Barse*, 107 N. Y. 329 ; *People* v. *Turner*, 117 N. Y. 227 ; *Matter of Trustees of Union College*, 129 N. Y. 308 ; Cooley on Taxation [3rd ed.], 526 ; Sutherland on Statutory Construction, § 483.)

A curative statute acts directly upon the defective assessment and legalizes it without further procedure by the taxing officers. This may legally be done as to such features of the procedure as might have been omitted in the original statute without affecting its validity. When, however, the new act requires something more to be done by the taxing officers and legalizes the assessment, provided those acts are done, it provides for a reassessment, or the completion of the old assessment. Such legislation is valid, provided the original taxing act was valid and the omission sought to be remedied is not jurisdictional, but an irregularity. Such, as we read it, is the act now before us, which we uphold as constitutional, both upon principle and authority.

To this general statement there is one exception. The last sentence of the first section of the act of 1909 is as follows : " No irregularity heretofore existing in the said assessments of bank shares shall be a lawful cause for relief by said board upon application made under this act *or by the court in any proceeding or action heretofore or hereafter instituted.*" To the extent that this prohibits the courts from giving relief in actions or proceedings pending when the act was passed on account of irregularities theretofore existing, we regard it as unconstitutional, because in effect it legalizes the assessment, even if no opportunity to be heard is given as required by the other provisions of the act. This would indorse and perpetuate the original evil of condemnation without a hearing, which the legislature had no power to do, either directly by legalizing the assessment without further proceedings, or indirectly by depriving the constitutional courts of jurisdiction in matters then pending before them. (*Gilman* v. *Tucker*, 128 N. Y. 190 ; Cooley on Constitutional Limitations, 354.)

That sentence, however, stands by itself, and is so separated from the rest of the statute in purpose and meaning that it

may be eliminated without affecting the validity of the remainder. It does not depend on the rest of the statute and the rest of the statute does not depend upon it. They are not so related in substance and object that it is impossible to suppose that the legislature would not have passed the one without the other. The rule of elimination should, therefore, be applied. (*Matter of Village of Middletown,* 82 N. Y. 196 ; *Matter of Metropolitan Gas Light Co.,* 85 N. Y. 526 ; *Skaneateles Water Works Co.* v. *Village of Skaneateles,* 161 N. Y. 154 ; 26 Am. & Eng. Ency. [2d ed.] 570.)

The final question, involving the effect of the statute upon this proceeding as presented by the record before us, is not without embarrassment. What is the situation that confronts us ? The return says that many millions of dollars are involved in this proceeding and others of like character commenced before the act of 1909 was passed. All taxation upon shares of stock in banks in the city of New York during a long period is infected with the same evil that compelled us to reverse in the case of the *Bridgeport Savings Bank.* Since that decision was made a valid statute has been passed, which, if properly observed, will remedy the bulk of the evil, but this proceeding and many others were instituted before the act took effect. That act is before us, as it was before the courts below, but what has been done under it is not before us and was not before them. The return is silent upon that subject. We are not informed, officially, what, if anything, has been done by the taxing authorities towards completing the assessment by following its requirements. Compliance cannot be presumed, and if it could, we should not know what was done with the assessment against the relator, whether it was canceled or reduced or completed in the original amount.

The statute is not self-executing, as it requires action by the taxing officers, such as the publication of notice in certain newspapers for a specified period ; authorizes application for cancellation and reduction to be made within another period ; provides for the determination of such applications by a date named and the like. That date had not arrived and none of

these periods had expired when the proceeding was argued before the Special Term, and the time for action in one respect was still running when the appeal was argued before us. The record is imperfect, and in view of the curative act it would be dangerous to finally pass upon the rights of the parties until all the facts have been placed before us so that complete justice can be done. (*Matter of Douglas* v. *Bd. Suprs. Westchester Co.*, 172 N. Y. 309, 313.) The peculiar situation requires a further and supplemental return, embracing all that has been done under said act affecting the assessment against the relator, or its stockholders. When all the facts are in the record the proper judgment can be pronounced, which will protect every right of the relator and at the same time afford the city of New York the protection which it was the intention of the legislature to provide.

The orders of the courts below should be reversed, with costs in both to appellant, the costs in the Appellate Division being fixed at fifty dollars and disbursements, and the matter remitted to the Special Term, with leave to the respondents to there move for leave to file a supplemental return.

CULLEN, Ch. J., EDWARD T. BARTLETT, HAIGHT, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Orders reversed, etc.