(143 App. Div. 277.)

PEOPLE ex rel. MERCHANTS' NAT. BANK v. PURDY et al., Com'rs of Taxes and Assessments.

(Supreme Court, Appellate Division, First Department.    March 10, 1911.)

TAXATION (§ 537*)—CORPORATE STOCK—ASSESSMENT—RECOVERY—INTEREST—CURATIVE ACT.

Laws 1909, c. 74, for curing an imperfect assessment of bank stock, is not an ordinary curative statute, legalizing the assessment as of the date it was originally laid, but only makes it a legal assessment as of the time steps therefor are taken under the statute; so that, the taxes having been paid, interest thereon may be recovered from the time of payment to the time of the validating of the assessment.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 537.*]

Appeal from Special Term, New York County.

Certiorari, on the relation of the Merchants' National Bank against Lawson Purdy and others, as Commissioners of Taxes and Assessments, to review a determination of the Board of Commissioners. From a final order dismissing the writ, relator appeals. Reversed, and order directed.

Argued before CLARKE, McLAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

J. Cuthbert Palmer, for appellant.
William H. King, for respondents.

DOWLING, J.    The effect of chapter 74, Laws 1909, as curative of the irregularities in assessments theretofore made upon the stock of shareholders in national banking associations by the board of taxes and assessments of the city of New York was determined in People ex rel. American Exchange National Bank v. Purdy, 196 N. Y. 270, 89 N. E. 838, which was a proceeding in certiorari to have reviewed and declared illegal such assessments upon relator's capital stock

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for the year 1907, and to secure a refund of the taxes paid. It was there held that, as the act provided for the completion of an imperfect assessment duly commenced under a valid statute, but not finished because notice had not been given nor an opportunity to be heard afforded, as required by the tax law, certain acts still remained to be performed by the board before the legislation in question became operative to cure the irregularities, and the matter was therefore remitted to Special Term, with leave to respondents there to move for leave to file a supplemental return showing what proceedings they had taken under the act. This having been done, the Special Term dismissed the proceeding, which dismissal was affirmed by the Appellate Division. The Court of Appeals, in passing upon the questions involved (Id., 199 N. Y. 51, 92 N. E. 232), in an opinion by Judge Hiscock in which all concurred, said:

"We determined, in effect, that the purported assessment complained of was invalid because of lack of notice and opportunity to be heard, but that the act passed after this proceeding was instituted (Laws 1909, c. 74), which, amongst other things, provided for said assessment and opportunity to be heard in relation thereto, and for any proper action by the commissioners of taxes and assessments as the result of such hearings was a valid statute providing for the completion of the original imperfect assessment, or for a reassessment. But we further held that the mere passage of the act did not validate the assessment because it required things to be done under it, and the record then present not showing what steps, if any, had in fact been taken by the tax officials, it was erroneous for the court below to dismiss the proceeding, and it would be dangerous for us to reverse such disposition and attempt to fix the final rights of the parties, and we therefore directed that the proceeding should be remitted for supplemental return, wherein might be set forth and whereunder might be established what was in fact done under and in pursuance of the statutory provisions above referred to. Our directions have been followed and a supplemental return had been filed and hearings had thereunder, whereby it now appears that the provisions of said statute were carried out and notice given of the proposed assessment of relator's stock, and an opportunity offered to it to be heard in relation thereto, but that no modification of said original purported assessment was made as the result of such hearing, but the same was allowed to stand at the amount first fixed. On these facts the courts below have again dismissed the relator's writ on the ground that the statute and the proceedings thereunder had cured the defects in and validated the assessment as first laid, and that it was therefore entitled to no relief, and the specific question argued on this appeal is whether the statute was an ordinary curative one legalizing an assessment as of the date when it was originally laid, or whether it was one which in effect provided that when certain steps had been taken there should then, and for the first time by completion or reassessment, be a valid enforceable assessment. I do not regard this question really as an open one after our former decision, * * * and it follows as a necessary corollary to those views that the purported assessment on which relator paid its taxes not only was not valid when these proceedings were commenced, but as then laid it has never been made valid.

"It has been made the basis or starting point on or from which, by prescribed additional or jurisdictional steps which we held valid, there has been built up a completed assessment or reassessment on or under which when so completed relator could be compelled to pay its taxes. From this it still further follows that relator, having paid its taxes under the coercion and duress of a purported assessment invalid in fact, but claiming and appearing to be valid and enforceable under ordinary circumstances, would be entitled to have those taxes refunded with interest and without prior demand. Ætna Ins. Co. v. Mayor, etc., 153 N. Y. 331, 47 N. E. 593; Bruecher v. Village of Port Chester, 101 N. Y. 240, 4 N. E. 272.

"But, under the statute and proceedings referred to, there has been secured in the meantime an assessment which is complete, valid, and enforceable at the same amount as the original purported one, and, if the relator should be allowed to collect the principal and interest of the taxes paid, it would be compelled forthwith to pay back the principal sum in satisfaction of such last assessment. Appreciating and being willing to avoid this circuitous process, the appellant contents itself with arguing that there shall be refunded to it simply the interest on the taxes, and to this, running from the date of payment to the date when the assessment was completed, I think it is entitled. The result is not only the logical one flowing from our decisions, but is equitable. If payment of the taxes had not been made, but enforcement thereof had been sought after completion of proceedings under the statute of 1909, it is very clear that no interest could have been collected as a penalty for nonpayment under the invalid assessment, and it would be unjust to allow the city, which has secured payment of taxes under the duress of an invalid assessment, to take advantage of its own wrong by retaining interest on the sums collected during the period when its collection was illegal."

The proceeding at bar is not distinguishable from the case cited, and the rule laid down there is decisive hereof. It follows, therefore, that the order appealed from must be reversed, with costs to appellant, and an order made which, while confirming the action of defendants under chapter 74, Laws 1909, in validating the assessments for the years 1901 to 1907, shall direct that interest be refunded to relator upon the amount of taxes collected from it for the years 1901 to 1907, inclusive, upon its shares of stock, from the date of collection in each respective year to the date when finally completed, viz., October 1, 1909, less any items of interest already refunded to individual stockholders in the relator. All concur.