which the award was made was based upon the subdivision of the parcel into lots bounding on the avenues. This case is distinguishable from Matter of Board of Water Supply, 73 Misc. Rep. 236, 130 N. Y. Supp. 997, affirmed 151 App. Div. 885, 135 N. Y. Supp. 1143, and 206 N. Y. 680, 99 N. E. 1118, in that here there is no evidence tending to show, or from which an inference might be drawn, that this tract of land was so plotted that the streets and avenues as laid out on the map would not have been permitted to remain and have been accepted as public streets and avenues had it not become necessary for the city to take them for acqueduct purposes. The plaintiff, who retained ownership of no abutting land to protect, as in City of Buffalo v. Pratt, 131 N. Y. 293, 30 N. E. 233, 15 L. R. A. 413, 27 Am. St. Rep. 592, has therefore, in the circumstances, failed to show that he was entitled to or that more than a nominal award was made for the fee. Matter of City of New York (Decatur Street) 196 N. Y. 286, 89 N. E. 829, 37 L. R. A. (N. S.) 281; Matter of the City of New York (Edgewater Road) 138 App. Div. 203, 122 N. Y. Supp. 931, affirmed 199 N. Y. 560, 93 N. E. 1120; Matter of City of New York (New Avenue) 153 App. Div. 164, 138 N. Y. Supp. 107. See, also, Matter of Mayor (Summit Avenue) 84 App. Div. 455, 82 N. Y. Supp. 1027; Weeks v. Railway Company, 207 N. Y. 190, 100 N. E. 719; Matter of St. Nicholas Terrace, 76 Hun, 209, 27 N. Y. Supp. 765, affirmed 143 N. Y. 621, 37 N. E. 635; Matter of Opening of Eleventh Ave., 81 N. Y. 436.

It follows therefore that the findings numbered VIII, IX, X, XIII, XIV, and the conclusion of law should be reversed, and a finding substituted to the effect that the plaintiff has failed to show that more than a nominal award of the total award was made for his title to and interest in the premises, and a conclusion of law substituted to the effect that the plaintiff is entitled to judgment for one dollar only, and that defendant is entitled to the costs of the action to be taxed by the clerk; and the judgment is reversed, with costs to appellant, and final judgment is directed on the decision as modified. All concur.

---

(160 App. Div. 491)

SECOND NAT. BANK OF CITY OF NEW YORK v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. February 6, 1914.)

1. TAXATION (§ 537*)—ASSESSMENTS—VALIDITY.

When the statute imposing a tax is unconstitutional, the tax itself and all acts of the taxing officers are void, and the tax if paid may be recovered back; but when the statute is constitutional, and there is a mere irregularity thereof by failing to give notice, the tax is only voidable when proper proceedings are taken to correct the error, and, if the tax is paid, it cannot be collaterally attacked in a suit to recover the payment.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 996–998; Dec. Dig. § 537.*]

2. TAXATION (§ 537*)—ASSESSMENTS—STATUTE.

The New York City Charter (Laws 1901, c. 466) and Tax Law (Consol. Laws, c. 60) levying taxes upon the shares of stock in banks was pro-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

nounced constitutional, but the method of the levy from 1901 to 1907 was denounced owing to the failure of the taxing officer to give notice or an opportunity to be heard. Thereafter the Legislature enacted Laws 1909, c. 74, which authorized the board of taxes and assessments to cancel or reduce assessments made for the years 1901 to 1907 on application within a fixed time, and provided for a review of the action of the board on certiorari. Section 2 of that act provided that all assessments of bank shares as to which no application for review should be made shall be considered ratified and confirmed. *Held* that, as the assessments were only voidable, a bank which did not, during the time limited, begin proceedings before the board of taxes and assessments to cancel or reduce the assessments on which taxes had been paid, could not thereafter maintain an action to recover back the amount of the taxes having ratified the voidable levy by its acquiescence.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 996–998; Dec. Dig. § 537.*]

Scott and McLaughlin, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by the Second National Bank of the City of New York against the City of New York. From a judgment for plaintiff, defendant appeals. Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

William Herbert King, of New York City, for appellant.
John A. Garver, of New York City, for respondent.

INGRAHAM, P. J. This is an action at law against the city of New York to recover a sum of money paid by plaintiff to defendant as a tax upon certain shares of stock of plaintiff. The city of New York, under the provisions of the Tax Law and the Charter, levied a tax upon certain shares of stock of plaintiff, which tax the plaintiff paid. The plaintiff commenced no proceeding by certiorari to review the assessment or the levy of the tax, and the time within which such a proceeding could be instituted was allowed to expire, without plaintiff's questioning the tax or objecting in any way to the validity of the assessment or the levy of the tax. This tax was paid for the years 1904, 1905, 1906, and 1907, on December 29, 1904, December 28, 1905, December 28, 1906, and December 30, 1907. The action was brought to recover the total amount of taxes paid with interest, but recovery was allowed, however, only for interest from dates of payment to October 1, 1909, when by proceeding, under chapter 74, Laws 1909, the amount of the assessment and the tax thereon was rendered valid. Other stockholders in other banks assessed at the same time as the plaintiff took proceedings by certiorari to review the assessment for taxation, and questions as to the validity of this assessment and the levy of this tax came before the Court of Appeals in People ex rel. Bridgeport Savings Bank v. Feitner, 191 N. Y. 88, 83 N. E. 592, when the assessment against the relator was canceled. The relator in that case contended that the tax in question was imposed without notice or an opportunity to be heard, and that the statute contained no provision for either. The court held that, if that was true,

not only must the tax be set aside, but the statute must be adjudged invalid, for it is a principle of our law that there can be no taxation without notice and a chance to complain on account of the alleged error or mistake. The taxpayer may object or protest even if he has no just ground for doing either. The court then examined the statutes under which this tax was imposed, and held that under the statute there was provision for notice to stockholders of bank stock, and that therefore the statute was valid. It further held that the statute had not been complied with, that, although a grievance day was provided, notice thereof was not given, and therefore, while the statute was valid, the tax was voidable. In disposing of this question, the court said:

"There is a material difference between a case where the statute imposing the tax fails to provide a grievance day and a case where the taxpayer has been deprived of an opportunity to be heard because the assessing officers fail to give him notice as provided by statute. A taxing act, which requires a valuation of property as part of the procedure, is unconstitutional unless it provides a grievance day, or an adequate opportunity to be heard and any tax levied under such a statute is void. If, however, a grievance day is provided, but notice thereof is not given, while the statute is valid, the tax is voidable. The assessors have jurisdiction, but the failure to give notice is an irregularity (People v. Turner, 145 N. Y. 451 [40 N. E. 400]), and the assessment, if attacked in due form and in due time, will be set aside, on account of such irregularity. In the case now before us the statute was valid, but the assessing officers failed to comply with it. They gave no notice and refused to hear any complaint, owing doubtless to a misunderstanding of the law. While therefore we hold the statute valid, we are compelled, on account of the irregularity in failing to give notice, to reverse the orders * * * and to cancel the assessment against the relator."

The court there held that the tax was not void but voidable because of the failure to give notice required by statute and an opportunity to the owner of the property assessed to be heard, and that an assessment if attacked in due time and in due form will be set aside on account of such irregularity. It was the assessment that was voidable for irregularity and not the levy of the tax, and to take advantage of a voidable assessment the party aggrieved must institute a proceeding to review the assessment. The plaintiff took no such proceeding; it made no objection to the assessment or the levy of the tax, but in due course paid the same to the comptroller of the city of New York.

[1] I do not understand that a person whose property is assessed for taxation can pay the tax and then seek to recover the amount paid in an action at law because of an irregularity in either making the assessment or imposing the tax. Here the distinction to which the Court of Appeals called attention in the Bridgeport Savings Bank Case is applicable. Where the statute imposing the tax is unconstitutional, the tax itself and all acts of the taxing officers under the void statute are void, and, of course, a tax paid under such a void statute, when not a voluntary payment, can be recovered back. But, when the statute is constitutional and there is a mere irregularity in the enforcement thereof by failing to give notice which it requires or by failing to comply with any other of the provisions of the statute, the tax is not void, but voidable, and, when proper proceedings are taken to correct the error, the assessment and tax imposed will be vacated.

I think it would be conceded, if the error of the commissioners had been in refusing to hear the owners of the property assessed, after having given the notice required by the statute, that such a refusal would be an irregularity that would have to be corrected by a direct attack upon the validity of the assessment, or, if the owners of the property were heard, but the commissioners refused to correctly determine the claim of the property owners to a reduction of the assessment, the same result would follow. I can see no difference between the failure to give notice required by statute and the refusal to hear the owners of the property assessed after notice given. The distinction is between a void statute, assuming to impose a tax, and an irregularity or defective proceeding under a valid statute, which was the fact in the case at bar. A voidable tax is void only on the election of the person taxed. Certainly, if the person taxed paid the tax and failed to take proceedings to review the assessment or the levy of the tax within the time allowed by law, the irregularity is waived and the tax becomes a valid tax. There is no basis for an action to recover from the state or municipality imposing the tax the amount paid or any part thereof because of such an irregularity.

[2] The Court of Appeals having on January 31, 1908, held this tax voidable, in the Bridgeport Savings Bank Case, the Legislature passed the act, known as chapter 74, Laws 1909, which authorized the board of taxes and assessments of the city of New York to cancel or reduce assessments for taxation of shares of stock of banks or banking associations in the city of New York made by the board in and for the years 1901 to 1907. The act then provided for application for reduction or cancellation of assessments by any person deeming himself aggrieved by such assessments for those years, which may be made to said board on or before September 1, 1909, and requiring the board on or before October 1, 1909, to determine every appeal presented under the act and to declare its determination by cancellation or reduction on the assessment rolls where necessary for any such assessment. It further provided that any determination of the board under the act might be reviewed by certiorari in the same manner that other assessments of personal property may be reviewed under section 906 of the Charter, and that any such proceeding to review must be begun on or before October 31, 1909. Section 2 of the act provided that all assessments of bank shares made from 1901 to 1907, inclusive, as to which no application for review shall be made under the act as therein provided, shall be and thereby are ratified and confirmed. It further provided that the act should apply to all said assessments of bank shares for the years 1901 to 1907, inclusive, "not heretofore directed to be canceled or reduced by order of the court, from which order no appeal is pending or can be taken at the time this act takes effect."

It appears that the tax commissioners proceeded under this act, published the notice therein specified, and heard all applications for reduction and cancellation of assessments and taxes. Plaintiff presented no such objection to the board, and therefore, under the express provisions of section 2 of the act, the assessments were ratified and confirmed. The effect of this act came before the Court of Appeals in

People ex rel. American Exchange National Bank v. Purdy, 196 N. Y. 270, 89 N. E. 838. That was a proceeding by certiorari to review the assessments upon the capital stock of relator, a national bank in the city of New York. It was claimed by the relator that the assessment was void and incurable because made without jurisdiction and without due process of law. It was further insisted by the relator that the assessments could not be cured by a confirming act, that the provisions in the act of 1909 for hearing and correction of the assessments after they had been made were insufficient to cure the vice in the method of making them, that the provisions in the act of 1909 that no court or other tribunal should have the power to grant relief against the illegality of the assessments on account of any irregularity, either in pending or subsequent proceedings, is unconstitutional in so far as it applies to irregularities that are not cured by the act of confirmation, that the defects in the assessments in question were jurisdictional, and therefore it was not within the power of the Legislature to cure them, and that the curative act was unconstitutional for the further reason that it attempted to give notice and a hearing after final imposition of the tax. The court, however, held the act was constitutional:

"The object of the statute was to lay hold of assessments commenced several years before the act was passed and to authorize their completion by doing what had not been done, although required by law. It provides for a notice to be given and a hearing to be had in the place of those omitted, owing to a misunderstanding of the statute governing the procedure. Any person deeming himself aggrieved by the tentative assessment is given ample opportunity to make complaint, to have it duly heard and determined, and to credit or restitution if the tax has been paid and the assessment is reduced or canceled. All persons who make no complaint pursuant to the opportunity afforded, are concluded, the same as they would have been if the opportunity had been duly given as required by the Tax Law. * * * A curative statute acts directly upon the defective assessment and legalizes it without further procedure by the tax officers. This may legally be done as to such features of the procedure as might have been omitted in the original statute without affecting its validity. When, however, the new act requires something more to be done by the taxing officers and legalizes the assessment, provided those acts are done, it provides for a reassessment, or the completion of the old assessment. Such legislation is valid, provided the original taxing act was valid, and the omission sought to be remedied is not jurisdictional but an irregularity. Such as we read it, is the act now before us, which we uphold as constitutional, both upon principle and authority"—with, however one exception, and that is a provision in the first section of the act, which is not important in this action.

Then the court proceeded:

"To the extent that this prohibits the courts from giving relief in actions or proceedings pending when the act was passed on account of irregularities theretofore existing, we regard it as unconstitutional, because in effect it legalizes the assessment, even if no opportunity to be heard is given as required by the other provisions of the act. This would indorse and perpetuate the original evil of condemnation without a hearing, which the Legislature had no power to do, either directly by legalizing the assessment without further proceedings, or indirectly by depriving the constitutional courts of jurisdiction in matters then pending before them."

As I read this decision, it expressly upholds the validity of the statute (chapter 74, Laws 1909), which in express terms provided that these assessments of bank shares made from 1901 to 1907, inclusive,

as to which no application for review should be made under the act, were ratified and confirmed. Now, therefore, after the passage of the act of 1909, the assessments still continued as tentative assessments, the banks assessed had an opportunity to appear before the commissioners and have corrected any error in the assessments, and a time was fixed within which such an application to the tax commissioners must be made. The plaintiff made no such application. The statute provided that, if no such application was made, the assessment and the tax thereon were ratified and confirmed, and this application relates back to the time when the assessment was made and the assessment and the tax were made valid and legal, to which thereafter no objection could be made. Of course, an entirely different question would have been presented, if the plaintiff had appeared before the tax commissioners and had presented objections to the assessment and such objection had been sustained, or if the plaintiff had applied for a writ to review the action of the taxing officers before the passage of the act of 1909, or after its passage in accordance with its provisions. But, having had the opportunity to appear and present objections and having failed to avail itself of that opportunity, it seems to me, it is now conclusively established that the assessment was just, the tax proper, and the plaintiff is now precluded either by direct proceeding to review the tax or indirectly to recover the money or any portion thereof paid to satisfy the tax from the city of New York.

I think therefore the judgment appealed from must be reversed, and, if the view hereinbefore taken is correct, the plaintiff has no cause of action, and the complaint must be dismissed.

LAUGHLIN and CLARKE, JJ., concur.

SCOTT, J. (dissenting). This action is, in form, one to recover the sums paid by plaintiff for taxes in the years 1904 to 1907, inclusive, with interest. In point of fact all that plaintiff seeks to recover, and all that it has recovered, is interest upon the taxes paid in those years from the respective dates of payment to the 1st day of October, 1909, when the taxes were legally relevied under the provisions of an act of the Legislature known as chapter 74, Laws 1909.

In People ex rel. Bridgeport Saving Bank v. Feitner, 191 N. Y. 88, 83 N. E. 592, it was held that the taxes attempted to be levied upon bank shares in the city of New York for a series of years, including those respecting which plaintiff now sues, were invalid because the tax commissioners, acting as assessors, had failed to give the banks against whom the taxes were levied notice of their assessment and an opportunity to be heard thereon. The court was able to find in the general Tax Law a provision for the giving of such notice and opportunity, which the commissioners had apparently overlooked and had certainly disregarded. The court therefore held that the act authorizing the tax law was valid and constitutional, but that the levying of the assessment and tax was void because the commissioners had not performed the acts necessary to invest themselves with jurisdiction to fix a valid assessment. This decision was handed down in January, 1908. In 1909 the Legislature passed an act known as chapter 74 of the Laws of that

year. This act after providing for the due publication of notices, etc., and a reassessment to be made by the board of taxes provided that such a proceeding might be reviewed by certiorari if begun on or before October 31, 1909, and that every determination made by the said board should be final and conclusive unless reversed or modified in a proceeding by certiorari brought as in the act provided. Under this act the board of taxes reassessed the plaintiff for the years respecting which this action is brought, at the same figures at which the former assessments had been fixed. The plaintiff, being satisfied with these assessments, made no attempt to review them by certiorari, and the money which it had paid on account of the invalid taxes was left in the hands of the city to be credited upon the taxes when legally levied.

The only question here is as to the city's liability for interest during the period that elapsed between the payment of the illegal tax and the levy of the legal one. The act of 1909 came before the Court of Appeals in People ex rel. American Exchange National Bank v. Purdy, 196 N. Y. 270, 89 N. E. 838, which was a proceeding by certiorari to review the assessment of the relator for the year 1907. The court pointed out that the act was not strictly speaking a curative one in the sense that it legalized a defective assessment, but that:

"The object of the statute was to lay hold of assessments commenced several years before the act was passed, and to authorize their completion by doing what had not been done, although required by law."

In other words, the effect of the act was not to legalize and validate an illegal and invalid assessment and tax, but to authorize a new assessment and tax validly levied. The old levy, under compulsion of which plaintiff paid the taxes, still remained as illegal and invalid as it had always been. The case last cited came before the Court of Appeals a second time (199 N. Y. 51, 92 N. E. 232), when it appeared that the assessment had been remade and the tax relevied under the act of 1909. The court took occasion to point out that the purported (original) assessment not only was not valid when the proceedings then before the court were commenced, but, as it was then laid, had never been made valid, from which it followed, as was held:

"That relator having paid its taxes under the coercion and duress of a purported assessment invalid in fact, but claimed and appearing to be valid and enforceable under ordinary circumstances, would be entitled to have those taxes refunded with interest and without prior demand."

It was considered, however, that inasmuch as, under the statute, a valid assessment had been made and a valid tax laid at the same amounts as the original invalid ones, it was unnecessary to resort to the circuitous method of paying back the taxes, only to repay them at once upon the valid tax, but that relator was entitled to be paid interest on the amount it had paid for the period between the payment of the illegal tax and the date upon which the lawful tax became payable.

The defendant does not question plaintiff's right to be paid interest upon the taxes paid in the years 1905 to 1907, inclusive, but insists that it has lost the right to recover them because it did not resort to a writ of certiorari to review the reassessment in 1909, claiming that by the provisions of the act passed in that year the exclusive remedy

provided for an aggrieved taxpayer was by means of such a writ. This contention, as we think, loses sight of the distinction between an invalid assessment as a basis for taxation, and an unlawful tax based upon an assessment. What is reviewable by certiorari is the assessment fixed as the basis upon which a tax is to be levied. This, being a quasi judicial act on the part of the assessors, must be reviewed, if at all, by certiorari. Hence, if the plaintiff had been dissatisfied with the reassessment made in 1909, it should have applied for a writ of certiorari to review it, and, if the assessment had been vacated in such a proceeding, the tax would necessarily have fallen with it; but the writ would have operated directly only upon the assessment and but indirectly upon the tax. The plaintiff, however, had no complaint to make concerning the reassessment of 1909, and had no fault to find with the tax based upon that assessment. The limitation of time within which a certiorari might be sued out under the act of 1909 was therefore no concern of plaintiffs. Its grievance is the earlier invalid tax. What operated as duress and coercion upon plaintiff was not the first invalid assessment, but the void and illegal tax based upon it, and the general rule is that a sum collected under an illegal tax can be recovered in an action at law for money had and received without first instituting certiorari proceedings. Bruecher v. Village of Port Chester, 101 N. Y. 240, 4 N. E. 272; Jex v. Mayor, etc., 103 N. Y. 536, 9 N. E. 39. That the assessment upon which the first tax was levied was wholly void, and not merely irregular and voidable, is firmly established by the various decisions of the Court of Appeals above referred to. The assessors were wholly without jurisdiction to make it, not because they had not jurisdiction of the general subject of assessment for purposes of taxation, but because the jurisdiction to levy a valid assessment was special and limited upon their observance of the indispensable constitutional prerequisite to a lawful assessment. These they omitted to observe. Being absolutely void, it was not necessary first to attack directly the assessment, before seeking to recover the money paid under coercion and duress of the illegal tax based on it.

So far therefore as concerns the award of interest on the taxes paid in 1905 to 1907, inclusive, the judgment appealed from is clearly right. As to the tax of 1904 a different question is presented by defendant's plea of the six-year statute of limitation, which is the statute applicable to such an action as the present. That tax was paid to the receiver of taxes on December 29, 1904, by means of plaintiff's cashier's check drawn on itself, and on that date the amount thereof was entered upon the defendant's books as a payment by plaintiff of the taxes of 1904. On the same day the check was deposited by defendant and credited to its account in the National City Bank of New York. On the next day, December 30, 1904, it was presented to and paid by the plaintiff through the New York Clearing House. This action was commenced on December 30, 1910. The question is whether the payment was made on December 29 or December 30, 1904. If on the former date its recovery is barred by the statute of limitations; if on the latter date, it is not. In Brundage v. Village of Port Chester, 31 Hun, 129, affirmed, 102 N. Y. 494, 7 N. E. 398,

it was said in a similar case, "The cause of action was perfect at the instant payment was made." And Trimmer v. City of Rochester, 9 N. Y. Supp. 695,† is to the same effect. We are of opinion that, in the present case, payment was made when the check, subsequently honored, was delivered and received in payment, credited upon the city's books as a payment and deposited in bank to the city's account.

A very similar question arose in Hunter v. Witzell, 84 N. Y. 549, 38 Am. Rep. 544, where the application of the statute of frauds depended upon whether payment on account of a contract was made when a check was given and accepted, or when it was afterwards honored by the bank upon which it was drawn. The court said:

"It is admitted that the check was then given, and it cannot be successfully denied that it was both delivered and received as a payment upon the contract price. * * * It is quite true that a check, in and of itself, is not payment, but it may become so when accepted as such and in due course actually paid. While not money, it is a thing of value, and is money's worth when drawn against an existing deposit which remains until the check is presented. * * * We think therefore there was a payment 'at the time,' within the meaning of the statute, and that the contract of sale was valid."

We are therefore of opinion that the tax was paid when the check was delivered and accepted on December 29, 1904, and that the cause of action then accrued. Consequently it was barred by the statute of limitations when the action was commenced.

The judgment appealed from must therefore be modified by deducting from the recovery so much thereof as represents interest upon the tax paid in 1904, and as modified affirmed, without costs to either party in this court.

McLAUGHLIN, J., concurs.