Referring back to the clause in the agreement under which this claim is made, it will be seen that it is divisible into two parts, one of which states the rights reserved to defendant in case of default in payment of the monthly installments, and the other of which states the right reserved to Miss Boyle's estate in case she dies and is not then in arrears. These provisions are clearly separable and independent (Gail v. Gail, 127 App. Div. 892, 112 N. Y. Supp. 96), and so all parties concede. The right reserved to defendant is to either declare the whole sum due, or to avoid the contract and retain as damages all money paid thereunder in case of default in the payment of any monthly installment. Defendant never attempted to exercise either of those options, and probably the acceptance of a payment of $30 in June, 1914, and crediting it as a payment of the installment falling due in May, effectually waived the right to exercise either of its options for any default committed prior to May.

The second part of the clause was, as has been said, as entirely independent of the first part as if it had been written into the contract as a separate clause, and it must be considered by itself. It conferred a privilege upon Miss Boyle's personal representative, in case of her death before the completion of the contract, "provided no payment hereunder is in arrears." It seems clear that the $900 which should have been paid, but had not been, was "in arrears." It had become payable, had not been paid, and consequently was in every sense of the word "in arrears."

The receipt of $30 in June, and the act of crediting it upon the payment due in May, while it constituted a waiver of certain privileges which the contract gave to defendant, did not pay, nor release Miss Boyle from the obligation to pay, the installments which were then overdue. Consequently at the time of Miss Boyle's death there were "payments in arrears," and the condition did not exist which would, under the contract, entitle her personal representatives to recover what she had paid.

The judgment appealed from must be reversed, and the complaint dismissed, with costs in all courts to the appellant. All concur.

---

PEOPLE ex rel. IMPORTERS' & TRADERS' NAT. BANK v. PURDY et al., Commissioners of Taxes and Assessments.

(No. 6870.)

(Supreme Court, Appellate Division, First Department. March 19, 1915.)

1. TAXATION ⬅496—ASSESSMENTS—REVIEW—LACHES.

Though there is no limitation of time within which certiorari to review an assessment of taxes must be applied for, yet in obtaining relief it is customary for courts to apply limitations of civil actions and not allow a recovery by certiorari where the right to recover at law is barred.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 890–910; Dec. Dig. ⬅496.]

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

2. TAXATION ⬅️⟶496—ASSESSMENTS—REVIEW—LIMITATIONS.

The statutory right to review by certiorari assessments for taxation is subject to the power of the court to refuse relief where the party applying for it has been guilty of laches.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 890–910; Dec. Dig. ⬅️⟶496.]

3. CERTIORARI ⬅️⟶9—DISCRETION OF COURT.

The common-law writ of certiorari is within the judicial discretion of the court.

[Ed. Note.—For other cases, see Certiorari, Cent. Dig. §§ 15, 16; Dec. Dig. ⬅️⟶9.]

4. TAXATION ⬅️⟶496—ASSESSMENTS—REVIEW—LACHES.

Certiorari applied for August 14, 1912, to review assessments of stock of relator made by the board of taxes and assessments of the city, of New York for the years 1901–1907, inclusive, on the ground that the assessments were imposed without notice or an opportunity to be heard, is barred by laches, where relator acquiesced in the assessments and paid the taxes without complaint, and where it took no proceedings for more than three years after a decision of the Court of Appeals declaring constitutional a statute limiting the time to review by proceedings begun on or before October 31, 1909, and allowed its claim at law to be barred by limitations, and the writ will be dismissed, unless relator stipulates to confine its remedy to interest on the taxes paid in 1906 and 1907, which it could recover in an action at law at the time of the application for the writ.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 890–910; Dec. Dig. ⬅️⟶496.]

Appeal from Special Term, New York County.

Certiorari by the People, on the relation of the Importers' & Traders' National Bank, against Lawson Purdy and others, as Commissioners of Taxes and Assessments of the City of New York, to review assessments of taxes for the years 1901–1907, inclusive. From an order dismissing the writ, because barred by Laws 1909, c. 74, relator appeals. Conditionally reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

J. Culbert Palmer and Edwin L. Kalish, both of New York City, for appellant.

Frank L. Polk, Corp. Counsel, and William H. King, both of New York City, for respondents.

INGRAHAM, P. J. On the 14th of August, 1912, the relator presented to the Supreme Court a petition alleging that for each of the years from 1901 to 1907, inclusive, the shares of stock of relator, a banking corporation created under the laws of the United States, were assessed for taxation for each of such years on a substantial valuation thereof, and the amount of such assessment was entered in the assessment roll of the city of New York for each of such years, made by the board of taxes and assessments; that during the month of December of each of the years 1901 to 1907, inclusive, relator received from the board of taxes and assessments of the said city of New York a notice of the assessment and taxation of the shares of stock of petitioner for each respective year, stating the aggregate amount of tax to be

collected and paid out by relator for such year, and at or about the same time there was delivered to the receiver of taxes a warrant for the collection thereof, and said receiver of taxes thereupon collected the tax so levied from relator; that in making said assessments in each of such years the commissioners of taxes and assessments of the city of New York did not complete such assessment on or before the 1st day of August in said year, nor did they give any notice that said assessment had been completed or was open to examination, nor did they give any notice that they would meet at any time or place to review such assessment, nor did they ever meet for such purpose, nor did they ever give the petitioner or its shareholders any opportunity to be heard in respect to such assessment, and relator claimed that this tax was void for the reason, before stated, that the tax law was unconstitutional, because it violated the fourteenth amendment to the Constitution, and article 1, § 6, of the Constitution of the state of New York, and section 5219 of the Revised Statutes of the United States (U. S. Comp. St. 1913, § 9784), for various reasons stated in the petition. It was further alleged that application for a writ of certiorari has not been heretofore made for the reason that the questions as to validity of such assessments and the manner in which such assessments were or should be made have been the subject of litigation in numerous proceedings pending in the courts of this state; that the final determination of the proper methods of making such assessments has only been recently finally determined by the highest court in this state; that the rights and interest of the defendants herein, or the city of New York, have been in no wise jeopardized, changed, or injuriously affected by reason of any delay in commencing these proceedings; that the time for applying by petition for the issuing of a writ of certiorari for the purpose of receiving the assessments aforesaid has not expired. And upon that petition the Special Term on the 14th of August, 1912, ordered that the writ issue, which was duly issued the 15th of August, 1912.

To that the respondent submitted a return, from which it appeared that the property was assessed for each of the years from 1901 to 1907, inclusive; that the commissioners notified the relator, as prescribed by section 24 of the Tax Law (chapter 62 of the Laws of 1909), during the months of October and December in each year; that the relator paid to the receiver of taxes the amount of tax imposed in the months of November or December in each of the years from 1901 to 1907, inclusive, and failed to make any application in any of the years for cancellation or reduction of any of said assessments, or to institute in any of the years any certiorari proceeding to review the action of the then commissioners in making said assessments. The return further stated that after the enactment of chapter 74 of the Laws of 1909, which became a law on February 27, 1909, the then commissioners caused all the books comprising the assessment rolls and containing the entries of assessments for taxation of shares of stock of banks and banking associations in the city of New York in and for the years 1901 to 1907, inclusive, to be brought together in a convenient place in their office, so as to be available and accessible for inspection by any person, and caused said books to remain open to public inspection in said office from March 18, 1909, to October 31, 1909, inclusive, and

duly caused to be published in the official newspapers of the city of New York a notice, subscribed by them, as prescribed by chapter 74, Laws of 1909; that between March 18, 1909, and October 31, 1909, various persons inspected said books and records, and that all persons were afforded every facility for such inspection; that between March 18, 1909 and September 2, 1909, various applications were under said act presented to and filed with the then commissioners by various parties who were shareholders of the various banks for the years 1901 to 1907, for cancellation or correction of assessments; and that between March 18, 1909, and September 2, 1909, no application was under said act presented to and filed with the then commissioners by relator, and in consequence thereof there was no cancellation or reduction of said assessment, and said assessments were confirmed. The return then asked that the writ be dismissed, on the ground of the relator's failure to make any application to the commissioners of taxes and assessments on or prior to October 1, 1909, and upon the further ground that the relator acquiesced in the assessment and was guilty of laches in failing, prior to this proceeding begun in 1912, to institute any certiorari proceeding for the review of the said assessments made in and for the years 1901 to 1907, inclusive.

On the 19th of June, 1914, the Special Term entered an order, from which this appeal is taken, dismissing the writ solely upon the ground that it was barred by the provisions of chapter 74 of the Laws of 1909, and from that order relator appeals.

The assessment on the shares of stock in the relator was made under the provisions of section 24 of the Tax Law (Consol. Laws, c. 60), and, notice having been given to relator of such assessment, relator paid the tax without objection or protest before the 31st of December of the year for which the tax was imposed. The question as to the validity of section 24 of the Tax Law seems to have been presented to the court in the case of People ex rel. Bridgeport Savings Bank v. Feitner in the year 1906, reported in this court in 120 App. Div. 838, 105 N. Y. Supp. 993. This court sustained the order of Special Term dismissing the writ, two justices dissenting, and that decision was reversed by the Court of Appeals in 191 N. Y. 88, 83 N. E. 592. The tax was held to be invalid upon the ground that it was imposed without notice or any opportunity to be heard. It was claimed that the statute contained no provision for either, and it was therefore claimed that the statute was in violation of the Constitution and the federal statutes; but it was held that the statute did contain such a provision for the giving of notice and affording an opportunity to relator to be heard, but that the defendants had failed to comply with the statute and give to the relator such notice as was therein provided for. Judge Vann, delivering the opinion of the court, said:

"If, however, a grievance day is provided, but notice thereof is not given, while the statute is valid, the tax *is voidable*. The assessors have jurisdiction, but the failure to give notice is an irregularity, and the assessment, if attacked in due form and in due time, will be set aside, on account of such *irregularity*."

In that case the statute was held valid; but the assessing officers had failed to comply with it. They gave no notice and refused to

hear any complaint. While, therefore, they held the statute valid, they reversed the order of the Special Term and canceled the assessments against the relator. This decision was announced January 31, 1908, and the question of the invalidity of this assessment and imposition of the tax was then established. In consequence of the decision declaring this tax voidable, the Legislature passed an act (chapter 74 of the Laws 1909), which became a law on February 27th of that year. Section 1 provided that the board of taxes and assessments of the city of New York was invested with the power to cancel or reduce assessments on stock of banks for the years 1901 to 1907, inclusive. Application for reduction or cancellation of such assessments was to be made to said board on or before September 1, 1909, specifying the grounds, and on or before October 1, 1909, the board was to determine every application presented under the act and declare its determination by cancellation or reduction on the assessment rolls where necessary for any such assessment. Failure to cancel or reduce an assessment was to be deemed a denial of the application for relief. Any determination of the board under the act was made reviewable by certiorari under section 906 of the Greater New York Charter (chapter 378 of the Laws of 1897, as re-enacted by Laws 1901, chapter 466); but any such proceeding to review must be begun on or before October 31, 1909. By section 2 of the act it was provided that all assessments of bank shares made in the city of New York during the years 1901 to 1907, inclusive, as to which no application for relief under this act should be made, should be and hereby were ratified and confirmed; that this act should apply to all said assessments of bank shares for the years 1901 to 1907, inclusive, not theretofore directed to be canceled or reduced by order of court, from which order no appeal is pending or can be taken at the time the act took effect.

Relator made no application under this act to the commissioners, and the assessments therefore stood as of the date of October 1, 1909. Relator presented no petition to the board of taxes and assessments under this act and commenced no proceeding to review the assessments thereunder. The effect of this act came before the Court of Appeals in the case of People ex rel. American Exchange National Bank v. Purdy, 196 N. Y. 270, 89 N. E. 838, and in the main this statute was upheld. Judge Vann, in the course of his opinion, said:

"A curative statute acts directly upon the defective assessment, and legalizes it without further procedure by the taxing officers. This may be legally done as to such features of the procedure as might have been omitted in the original statute without affecting its validity. When, however, the new act requires something more to be done by the taxing officers, and legalizes the assessment provided those acts are done, it provides for a reassessment, or the completion of the old assessment. Such legislation is valid, provided the original taxing act was valid, and the omission sought to be remedied is not jurisdictional, but an irregularity. Such, as we read it, is the act now before us, which we uphold as constitutional, both upon principle and authority."

One provision of the act, however, the court held was unconstitutional, to the extent that the courts were prevented from granting relief

in actions pending when the act was passed, on account of an irregularity theretofore existing. That sentence, however, stands by itself, and is so separated from the rest of the statute in purpose and meaning that it may be eliminated without affecting the remainder. This proceeding was a certiorari, instituted apparently before the passage of the act of 1909, and the court, after thus sustaining the act, considered the question presented as to what effect that act had upon the pending proceeding to review the assessment that had been declared in the Bridgeport Bank Case to have been illegal. In determining that question the court said:

"All taxation upon shares of stock in banks in the city of New York during a long period is infected with the same evil that compelled us to reverse in the case of the Bridgeport Savings Bank. Since that decision was made a valid statute has been passed, which, if properly observed, will remedy the bulk of the evil, but this proceeding and many others were instituted before the act took effect."

But as the proceedings under the act of 1909 were not before the court the order dismissing the writ was reversed, and the matter remitted to Special Term, with leave to there move for leave to file a supplemental return. That case was decided November 9, 1909. The case went back to Special Term, when a supplemental return was filed, and the case again went to the Court of Appeals. The learned counsel for the relator in this case was also counsel for the relator in that. It is reported in 199 N. Y. 51, 92 N. E. 232. The Special Term had dismissed the writ of certiorari in that case, and that dismissal had been confirmed by this court. It was apparent that the supplemental return had been filed, and it appeared that the provisions of the statute of 1909 were carried out, and notice given of the proposed assessment of stock, and an opportunity offered to relator to be heard, but that no modification of said original purported assessment was made as the result of such hearing, but the same was allowed to stand at the amount first fixed. The court then said the question was presented as to whether the act of 1909 was an ordinary curative one, legalizing an assessment as of the date when it was originally laid, or whether it was one which in effect provided that, when certain steps had been taken there should then, and for the first time by completion or reassessment, be a valid, enforceable assessment. It was held that the purported assessment, on which relator paid its taxes, not only was not valid when these proceedings were commenced, but that, as it then laid, it has never been made valid, and that it followed that relator, having paid its taxes under the coercion and duress of a purported assessment invalid in fact, but claimed and appearing to be valid and enforceable under ordinary circumstances, would be entitled to have those taxes refunded, with interest and without prior demand. The court then said:

"But under the statute and proceedings referred to there has been secured in the meantime an assessment which is completed, valid, and enforceable at the same amount as the original purported one, and if the relator should be allowed to collect the principal and interest of the taxes paid, it would be compelled forthwith to pay back the principal sum in satisfaction of such last

assessment. Appreciating and being willing to avoid this circuitous process, the appellant contents itself with urging that there shall be refunded to it simply the interest on the taxes paid, and to this, running from the date of payment to the date when the assessment was completed, I think it is entitled. This result is not only the logical one flowing from our decision, but is equitable. If payment of the taxes had not been made, but enforcement thereof had been sought after completion of proceedings under the statute of 1909, it is very clear that no interest could have been collected as a penalty for nonpayment under the invalid assessment, and it would be unjust to allow the city, which has secured payment of taxes under the duress of an invalid assessment, to take advantage of its wrong by retaining interest on the sum collected during the period when its collection was illegal."

And the further holding was made that the provisions of the Tax Law were broad enough to include this case and afford the relief suggested on the theories argued and adopted by counsel. This case was decided June 7, 1910. And still the relator remained quiescent, making no claim against the city of New York for a refund of taxes; and it never made any claim that the assessment was excessive or in any way invalid, or that thereby relator had been compelled to pay a larger tax than its just proportion to meet the public burden. Subsequently the Merchants' National Bank of the City of New York presented a petition to the Supreme Court and obtained thereon a writ of certiorari to review the assessments during this year. It came before this court in 143 App. Div. 277, 128 N. Y. Supp. 119. In that case the Special Term had dismissed the writ, and on appeal to this court that order was reversed, and an order made which, while confirming the action of defendants under chapter 74 of the Laws of 1909 in validating the assessments for the years 1901 to 1907, directed that interest be refunded to relator upon the amount of taxes collected from it for the years 1901 to 1907, inclusive, upon its shares of stock, from the date of collection in each respective year to the date when finally completed, namely, October 1, 1909. The question of laches does not seem to have been considered in this court, but at Special Term the court had dismissed the writ on the ground:

"That the relator is precluded by its laches in failing in due time to institute certiorari proceedings to review the assessments made in 1901 to 1907, inclusive, from obtaining any relief as to those assessments."

The Court of Appeals, while affirming the order of this court in 202 N. Y. 599, 95 N. E. 814, said:

"Had the learned Appellate Division taken the same view and affirmed the order of the Special Term, we would have had no right to disturb its decision. We are equally without power to disturb the decision of the Appellate Division to the contrary, for the discretion to pass upon the question of laches rests in both branches of the Supreme Court. We must therefore affirm the order herein, but in doing so we call attention to the fact that, notwithstanding the act of 1909, the relator, and all others similarly situated, might have invoked the usual common-law certiorari at any time from the period of 1901 to 1907, and thus have obtained the necessary relief. The statute of 1909, in which there is a provision for what may be called a statutory certiorari, in no way affects any pre-existing right to the so-called common-law writ in behalf of any party aggrieved by the taxation above mentioned."

With this plain intimation from the Court of Appeals there came before this court the case of People ex rel. German-American Bank v.

Purdy, in 154 App. Div. 529, 139 N. Y. Supp. 180. In that case relator had obtained a writ of certiorari to review. the assessments for the years 1901 to 1907, inclusive, and the Special Term had denied defendant's motion to dismiss the writ, and directed payment to relator of interest on taxes paid under the assessment. Mr. Justice Miller, in writing the opinion of this court, after calling attention to what was stated by the Court of Appeals in the American Exchange Bank Case, 196 N. Y. 270, 89 N. E. 838, and the Merchants' National Bank Case, 202 N. Y. 599, 95 N. E. 814, said:

"I am of the opinion that the said act of 1909 is an absolute bar to this proceeding. It afforded every one ample opportunity to apply to the board of taxes and assessments for a reduction or cancellation of the assessment, and for a review by certiorari of the determination of the board on such application, and expressly limited the time within which a proceeding to review might be begun. It then provided that all assessments as to which no application for relief should be made under the act were ratified and confirmed. So far, then, as the case in hand is concerned, the act was a statute of limitations, and a remedy even for jurisdictional defects may thus be barred."

On appeal to the Court of Appeals, in 207 N. Y. 758, 101 N. E. 455, that order was affirmed, the court saying:

"The writ was not applied for till November, 1910. The Appellate Division, reversing the Special. Term, dismissed the writ for laches. We think the action was eminently proper. The relator acquiesced in the method of assessment and paid the taxes based thereon without complaint till the decision made by this court in another case gave an opportunity for assailing the tax. Had complaint been promptly made, the proper method of procedure by the board of assessors would have been determined, and a change in the existing method been made to accord with our decision. To allow the relator after this long delay to now recover back the money it has paid would be prejudicial to the city of New York, for the ordinary expenses of a municipality are necessarily predicated upon its receipts from taxation. Moreover, one-half of the claims of the relator, if they were the subject of ordinary action, would have been barred by the statute of limitations."

[1-4] The writ in this case was applied for nearly two years after the writ in the German-American Bank Case, and it now appears that not only one-half of the claims of the relator has been barred by the statute of limitations, but five-sevenths of the claims, all except the taxes that were paid on December 31, 1906, and December 31, 1907, and, assimilating the statute of limitations proper to an action to recover back the taxes, it would be clear that relator could have no relief in this proceeding for any taxes except from those two last years. It is true that there is no express statute· of limitation of the time within which such a writ must be applied for; but in obtaining relief of this kind it has been customary for courts of equity to apply the limitations of civil actions, and not allow a recovery by writ of certiorari where the right to recover at law was barred by the statute. Relator has lost by its laches the right to recover taxes paid by it in an action at law. These assessments had been declared invalid by the Court of Appeals on January 31, 1908, the Legislature had attempted to validate the tax by the act of 1909, that statute had been declared constitutional by the Court of Appeals on November 9, 1909, and for more than three years thereafter relator took no proceeding and al-

lowed its claim at law to be barred by the statute of limitations. If the court has any power to refuse it any relief for the portion of the claim thus barred by the statute, and that the court has such power is conclusively established by the German-American Bank Case, 207 N. Y. 758, 101 N. E. 455, it seems to me to be the duty of this court to treat such laches as precluding relator from any relief.

·The relator claims, however, that it has an absolute statutory right to this relief by certiorari, that this is a property right protected by both state and federal Constitutions, and which relator cannot be deprived of by legislation. But his statutory right was always subject to the power of the court to refuse relief where the party applying for it had been guilty of such laches as justified the court in dismissing his application. But this writ does not appear to be a statutory writ, but the usual common-law writ of certiorari, which was always within the judicial discretion of the court. The appellant claims, however, that the Court of Appeals in the case of Second National Bank v. City of New York, 107 N. E. 1039, have reversed their former decision, which in effect holds that it is the duty of this court to apply the question of laches in such proceeding as the present and dismiss the writ, where relator has been clearly guilty of laches. But I can find no authority for this contention. The Second National Bank Case was an action at law to recover back interest on the money paid on these various assessments. This court held the action would not lie and the only remedy was by writ of certiorari. The question there presented was whether the assessment was absolutely void or only voidable. This court, following what it understood to be the decision of the Court of Appeals, held it voidable only, and therefore the action could not be maintained. The Court of Appeals said we were mistaken in our construction of their decision, and that, assuming the tax was void, an action at law could be had to recover the amount paid under the void assessment; but in that case the court sustained the defense of the statute of limitations as to payments made more than six years before the commencement of the action.

We are disposed in this case to follow the rulings of the Court of Appeals in the American Exchange Bank Case, and allow relator to recover in this proceeding the amount that it would have been entitled to recover if it had brought its action at law at the time the writ was applied for, to avoid circuity of action, if the relator is willing to accept such sum as the relief to which it is entitled. The result which I recommend is that this order appealed from should be affirmed, on the express ground that relator was guilty of such laches as justified our dismissing the writ with $50 costs and disbursements, unless relator stipulates to confine its remedy to the interest on the taxes for the last two years—the payments made in 1906 and 1907.

On filing such stipulation the order appealed from should be reversed, and an order entered declaring the assessments for these two years void, and directing defendant to pay to the relator the interest on the sum of $81,757.35, the taxes paid on December 31, 1906, from

that date to October 1, 1909, and on the sum of $83,816.05, the taxes paid on December 31, 1907, from December 31, 1907, to October 1, 1909, without costs of this appeal. All concur.

---

NEW YORK LIFE INS. CO. v. HOADLEY et al.  (Nos. 6943, 6944.)

(Supreme Court, Appellate Division, First Department.  March 19, 1915.)

MORTGAGES ⬀524—FORECLOSURE SALE—COMPLETION OF PURCHASE—DUTY.

On foreclosure, property was six times bid in; the purchaser in each instance depositing 10 per cent. of the purchase price. Four of the bids were for defendant. *Held*, that as the mortgagee has received the deposits amounting to 60 per cent. of the debt, and as the last bidder was a person of substance, and as plaintiff had made no attempt to compel consummation of the purchase by previous bidders, it was not entitled to an order requiring the last bidder and the others to complete the purchase, by paying over the remaining 40 per cent. of the mortgage debt, on the theory that the successive bids were made to delay plaintiff, though it was proper to order the last bidder to complete his purchase.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1524; Dec. Dig. ⬀524.]