In the case of Maynard v. Hill, 125 U. S. 190, 8 Sup. Ct. 723, 31 L. Ed. 654, the Legislature of the state of Oregon passed an act dissolving the bonds of matrimony between husband and wife, and the Supreme Court held that such an act was an exercise of legislative power "upon a rightful subject of legislation," on the theory that Oregon had the right and power to determine the marital status of its own citizens. See, also, Livingston v. Livingston, 173 N. Y. 389, 66 N. E. 123, 61 L. R. A. 800, 93 Am. St. Rep. 600. This state has seen fit in its wisdom, to discourage marriages contracted by immature persons, who have not reached the age of consent, and has provided for the annulment of such marriages under certain circumstances and conditions. Citizens of this state should not be permitted to evade the laws of this state by crossing state lines and contracting marriages hostile to the general policy of our laws. See Andrews v. Andrews, 188 U. S. 14, 23 Sup. Ct. 237, 47 L. Ed. 366.

By this statement we do not mean to contend that, because parties leave the state to evade its law, that fact necessarily renders a marriage so contracted void, but that, in construing and interpreting the provisions of the Code in relation to the right to annul such marriages, such right should not be destroyed or defeated by the circumstance of an attempted evasion of the provisions of the law. We find nothing in the case which, in our opinion, justifies the court in refusing to grant the decree of annulment asked.

Let the usual judgment, therefore, be entered.

———————

PEOPLE ex rel. WESTERN NEW YORK & P. RY. CO. v. WOODBURY et al.

(Supreme Court, Appellate Division, Third Department. June 24, 1909.)

1. MUNICIPAL CORPORATIONS (§ 958*)—ASSESSMENT OF TAXES—PROCEDURE.
  Rochester City Charter, Laws 1907, p. 2218, c. 755, containing a complete system of procedure relative to the assessment and collection of taxes in the city inconsistent with Tax Law, Laws 1896, p. 795, c. 908, prevails over the tax law.
  [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 2023; Dec. Dig. § 958.*]

2. MUNICIPAL CORPORATIONS (§ 974*)—ASSESSMENT OF TAXES—REVIEW—LIMITATIONS.
  Under Rochester City Charter, Laws 1907, p. 2218, c. 755, authorizing the council to amend and confirm the tax rolls and levy the taxes, an assessment becomes final on the confirmation of the tax rolls by the council, and the time within which certiorari must be brought to review the determination, within Code Civ. Proc. § 2125, begins to run from the date of confirmation.
  [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 2086; Dec. Dig. § 974.*]

Appeal from Special Term, Albany County.

Certiorari by the People, on the relation of the Western New York & Pennsylvania Railway Company, against Egbert Woodbury and others, composing the State Board of Tax Commissioners, to review an assessment by the State Board of Tax Commissioners of special

———
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

franchises of relator in the City of Rochester. From an order denying a motion to quash the writ, the City of Rochester appeals. Reversed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

William W. Webb, Corp. Counsel, for appellant.

Frank Rumsey (Ernest C. Whitbeck, of counsel), for respondent.

COCHRANE, J. The motion to quash the writ of certiorari was based on the alleged fact that the writ was not allowed within four months after the assessment sought to be reviewed became final. Code Civ. Proc. § 2125.

Section 45 of the tax law (Laws 1896, p. 795, c. 908, added by Laws 1899, p. 1592, c. 712, § 2, as amended by Laws 1900, p. 512, c. 254, § 2) provides as follows:

"An assessment of a special franchise by the State Board of Tax Commissioners may be reviewed in the manner prescribed by article eleven of this chapter, and that article applies so far as practicable to such an assessment, in the same manner and with the same force and effect as if the assessment had been made by local assessors; a petition for a writ of certiorari to review the assessment must be presented within fifteen days after the completion and filing of the assessment roll, and the first posting or publication of the notice thereof as required by law."

Said article 11, in section 251 thereof, directs that the petition for the writ must be presented "within fifteen days after the completion and filing of the assessment roll and the first posting or publication of the notice thereof." Section 42 of the tax law makes provision for the entry by local assessors in their assessment rolls of special franchise assessments of the State Board of Tax Commissioners. The filing of the assessment roll and the posting and publication of notice of such filing as referred to in said sections 45 and 251 of the tax law are commanded in section 38 thereof as follows:

"In cities the assessment roll when thus completed and verified shall be filed on or before September first, in the office of the city clerk, there to remain for fifteen days for public inspection. The assessors shall forthwith cause a notice to be posted conspicuously in at least three public places in the tax district and to be published in one or more newspapers, if any, published in the city, that such assessment roll has been finally completed and stating that it has been so filed and will be open to public inspection."

Such requirement follows immediately after the provisions for the review and correction of the assessment roll by the assessors after notice to all persons aggrieved, as contained in sections 35, 36, and 37 of the act.

It is the theory of the relator that this proceeding to review the assessment herein is controlled by the foregoing provisions of the tax law, that, accordingly, the proceeding may be instituted within 15 days after the assessment roll is filed with the city clerk and notice posted and published as required by said section 38, that such filing, posting, and publication has not taken place, and that consequently the time for the commencement of this proceeding has not been limited. The position of the relator is stated in its petition as follows:

"That said assessors of the city of Rochester have completed their assessment roll for the year 1908, and the same has been confirmed by the common council of the city of Rochester, and that the taxes upon said assessments, if the same were just, valid, and legal, were due and payable from your petitioner on May 1, 1908; but no notice of said assessment has been posted or published, and 15 days have not elapsed since the completion and filing of said assessment roll as aforesaid, and the first posting or publication thereof, as required by law."

It is very clear that if the provisions of the tax law requiring the assessment roll to be filed in the office of the city clerk for 15 days for public inspection, and requiring the posting and publication of notice thereof, apply to the city of Rochester, the relator is right in its contention, because those acts have not been performed, and without their performance the 15 days within which by the tax law this proceeding might be instituted has not begun to run; but it is equally clear that if, as contended by the appellant, those provisions are inapplicable to the city of Rochester, this proceeding is not saved thereby.

The present charter of the city of Rochester is chapter 755, p. 2218, of the Laws of 1907, enacted after the tax law. The charter seems to contain within itself a complete system of procedure relative to the assessment and collection of taxes. It provides: That the tax rolls shall be prepared by the assessors on or before January 15th in each year; that they may review and revise their rolls after notice and must deliver them to the city clerk on or before the 1st day of April (section 188); that the common council must meet on the 1st day of April for the purpose of confirming the tax rolls and levying the taxes, and must hear the allegations and complaints of all persons interested of which meeting and the purpose thereof and of such hearing the city clerk must give notice by publication for at least three days (section 107); that at such meeting or an adjourned meeting not later than five days after April 1st the common council must, after amending and correcting the tax rolls, confirm the same (section 108), and levy the taxes (section 109), at which time such taxes become a lien upon the real estate in respect to which the same have been levied (section 199); that the assessors must insert in the tax rolls so confirmed by the common council the taxes levied by that body, and the rolls must thereupon be delivered to the treasurer of the city on or before the 20th day of April (section 190); and that the city treasurer must immediately give public notice that all persons named in the rolls are required to pay their taxes on and after the 1st day of May and before the 15th day of September, and must proceed to collect and receive the same on such 1st day of May (section 165).

It will thus be seen that the city charter makes no provision for the custody of the tax rolls by the city clerk for the purpose of public inspection. His only duty in reference thereto is to submit the same to the common council for its action and to give the required notice of hearing by that body. The latter body under the charter need not take action on the rolls until April 6th, and they must be delivered not later than April 20th, less than 15 days thereafter to the city treasurer, who must immediately give notice that on May 1st he will proceed with the collection of the taxes. The city clerk has no duty whatever with

reference to the tax rolls after the same have been amended and confirmed by the common council, and there is thereafter no period of 15 days prior to the collection of the taxes during which, within the contemplation of the charter, the rolls are in the possession of any officer for the purpose of inspection by the public, or during which period of 15 days' notice of filing with any officer is to be posted or published. If the common council does not take final action on the rolls until April 6th, the last day allowed for that purpose, they must at any time within 14 days thereafter be delivered to the city treasurer, and, if on the 14th day thereafter they are so delivered to that officer, he must 10 days after such delivery be prepared to receive payment of the taxes, so that it would in such case be physically impossible for the rolls to remain with any officer 15 days for public inspection. The procedure specified by the charter is entirely dissimilar to that contemplated by the general act. The two acts are inconsistent, and the charter must prevail. The last action with reference to the amendment and correction of the tax rolls is taken by the common council after notice to the public and an opportunity for the presentation of grievances, and, when the common council takes such action and amends and confirms the rolls, the taxes immediately become a lien by virtue of the charter on the property affected, and the right of any person to review the assessment becomes at the same time complete.

Under the charter the assessment in question became final and binding on the relator at the time of the confirmation of the tax rolls by the common council not later than April 6, 1908. No subsequent action was necessary or possible under the charter to limit the time within which this proceeding might be instituted, and as it was not instituted until September 5, 1908, it follows that the motion to quash the writ of certiorari issued to review such assessment should have been granted.

The order must be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs. All concur.

---

### In re CHAPMAN.

(Supreme Court, Appellate Division, Second Department. June 18, 1909.)

**1. TAXATION (§ 861\*)—TRANSFER TAXES—PRIOR TRANSFER.**

Where property passed by will at a time when no transfer or inheritance tax statute was in force, the property transferred could not be subjected to a tax imposed by subsequent legislation.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1676; Dec. Dig. § 861.\*]

**2. WILLS (§ 634\*)—CONSTRUCTION—VESTED ESTATES.**

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes