THE PEOPLE OF THE STATE OF NEW YORK ex rel. ALBANY COUNTY SAVINGS BANK, Appellant, *v.* RICHARD J. LEWIS, Commissioner of Assessment and Taxation and Head of the Department of Assessment and Taxation of the City of Albany, and Others, Respondents. (Assessment of 1928.)*

Third Department, May 3, 1929.

*E. W. & E. E. Rankin* [*John J. McManus* of counsel], for the appellant.

*George A. Reilly, Corporation Counsel* [*Anthony DeStefano, Assistant Corporation Counsel*, of counsel], for the respondents.

DAVIS, J. The relator is the owner of property in the city of Albany and is aggrieved by the assessment made thereon in the year 1928. It is claimed that the assessment is illegal and void, and is erroneous because of the inequality of the assessment as compared with that on other property. The petition was verified December 7, 1928, and a writ of certiorari was issued the same day.

The respondents, without making return, moved to quash the writ. No affidavit accompanied the notice. The motion was granted and the order is here for review. The principal question is whether the relator presented the petition to the court within the statutory time. The respondents argue that the limit of fifteen days since the completion of the rolls had expired. The appellant denies this but asserts that, though this be the fact, it has four months within which to act. (Civ. Prac. Act, § 1288.) The hearing upon return of the statutory order of certiorari is at a term of the Appellate Division. (Id. § 1300.) The special writ provided for in sections 290 and 291 of the Tax Law is returnable before a Special Term; and the hearings after return are there held. (Id. § 293.) The relator has adopted the latter procedure. Without discussion, we will hold for the purposes of this appeal that the fifteen-day limit applies. (Laws of 1880, chap. 269; Laws of 1883, chap. 513; *People ex rel. Crystal Water Co.* v. *Coler*, 38 App. Div. 604.)

The question of timely action involves the study of special statutes, their interpretation, the practice followed, and the effect of general laws on the plan and practice of assessment prevailing in Albany.

The proceedings regulating the assessment of property and the collection of taxes in the city of Albany find their basis in chapter 86 of the Laws of 1850. Subsequent amendments to that act, to which our attention has been called, have been few and inconsequential in character. Since 1850 Albany has grown greatly in population and in the value of its taxable property. In many respects the general law and practice regulating assessment and taxation have changed. This law in its provisions is archaic and outgrown. It has been necessary in administering this department of city government to resort to general laws and to build up a practice extra-legal in its nature, the origin of which cannot well be traced to any statute.

The original act did not provide for review by certiorari. A general act (Laws of 1880, chap. 269) provided aggrieved owners with such method of review. These provisions were continued in the general act relating to taxation (Laws of 1896, chap. 908, § 250 *et seq.*, constituting chapter 24, General Laws). The act of 1880 was repealed. A similar provision was made in the Tax Law of 1909, chapter 62 (Consol. Laws, chap. 60, § 290 *et seq.*); and preserved in the amendments subsequently adopted. In language differing slightly, in the statutes referred to, it was provided that application for review must be made within fifteen days after the completion and filing of the assessment roll and notice given thereof. (Tax Law, § 291.) Preceding special statutes like chapter 86 of the Laws of 1850, were not expressly repealed, and this act is deemed in effect. (See *Fulton* v. *Krull*, 200 N. Y. 105; *Carroll* v. *McArdle*, 216 id. 232.) It has always been a problem in cases like this to determine how the general and special statutes may be reconciled and what provisions of the general law may be applied when the special act seems inadequate to furnish proper relief. The Tax Law was at least a codifying act. (*Peterson* v. *Martino*, 210 N. Y. 412.) Where the special acts are silent or obscure, authority may there be found to regulate procedure. (*People ex rel. Empire Mortgage Co.* v. *Cantor*, 198 App. Div. 317.)

General statutes regulating assessments fix a definite time for making objections, for the completion and verification of the roll and for filing in some public office. (See Tax Law, §§ 36–39.) It was originally provided in the special act that the board of assessors should complete the assessment rolls on or before the first day of September of every year and should then cause notices thereof to be published at least twenty days. These notices were

to set forth that the assessors had completed their assessment rolls and that they were at the office of the assessors at the City Hall where they might be examined by any person; and that the board of assessors would meet at the expiration of such twenty days and remain in session five days for the purpose of reviewing their assessment on the application of any person aggrieved.

It was further provided that the board should hear the objections, make review and enter such changes on the roll as appeared proper and just. When they had disposed of the objections, the assessors were required to sign the rolls of the respective wards of the city and attach a certificate indicating the completion of their work and its finality. The rolls thus certified were to be delivered on or before the first day of November to the supervisors of the several wards in the city, whose duty it was to deliver the same to the board of supervisors at their next meeting.

An amendment in 1883 (Chap. 513) provided that after the completed assessment rolls had been opened for inspection they should remain in the custody of the assessors who should verify them and open the same for public inspection and examination from the third Thursday in November to the fourth Thursday in November; notice of which opening should be given by publication for fifteen days; and that the completed and verified assessment rolls should be delivered to the clerk of the board of supervisors on or before the first of December of each year.

It is said that the practice under these ancient statutes has not been uniform. If there is a purpose that an owner after making objections should have the opportunity to review by certiorari, such opportunity may easily be made difficult of performance. Whilst there is no return and no affidavits on the part of the respondents indicating just what has been done, enough appears from the petition and argument to indicate that the methods adopted have been to a large extent haphazard and confusing, not alone to the property owner but to any court called upon to furnish redress to one aggrieved.

As we understand it, a person aggrieved would have a period of twenty days in which to examine the roll and determine the illegality or inequality of his assessment. He would then have five days in which to present his grievance to the board of assessors and demand relief. Unless decision was made immediately and he was so informed, there would be a period in which the books were closed and he might assume that the assessors were deliberating on the various objections taxpayers had raised. Then he would receive public notice that the books would be opened for inspection between the third and fourth Thursdays in November. By the

time they were opened, the fifteen days given in the notice would have expired. He might then examine the rolls and if he discovered that his assessment had not been changed or reduced, it would be too late for him to apply for the writ of certiorari, assuming that the fifteen-day limit applies after the verification and completion of the rolls, which theoretically would occur before the books were opened.

The claim of the respondents here is that the time in which relator might apply for the writ expired on the third Thursday of November or even earlier. It is not surprising that doubt should exist as to date of expiration, after reading the statute. According to the view of the respondents, the aggrieved owners are finally foreclosed before they may know whether their objections are denied. Of course, the question of time need not be raised as to those entitled to special favors.

As a matter of practice, it is said the rolls are not in fact completed and verified before the notice is given; and the verification occurs only when they are ready for delivery to the clerk of the board of supervisors on December first. This is disputed by statements in the brief of counsel for respondents; but his assertion finds no support in the record. At any rate, the rolls remain in the hands of the assessors. If this is the practice, then opportunity, if not power, is given to the assessors to make changes after the rolls are by law supposed to be closed. The law contemplates final action at a definite time and that the rolls shall pass into other hands so that no longer may the assessors have any power to engage in jugglery or make corrections in the rolls. (*People ex rel. Hoesterey* v. *Taylor*, 239 N. Y. 626.) It has been publicly charged before the Legislature that these rolls are kept open and changes are made after election for political purposes. At any rate, if an owner had been able to discover after grievance day that his objections had not been sustained and acted upon favorably, and he obtained a writ of certiorari, he might be met with a return showing some changes had been made at an unknown time so that his petition did not truly state conditions. The whole system of procedure is irregular and confusing and may easily be oppressive. It seems designed to preclude citizens from having the clear rights or remedies afforded under general laws.

Courts deal with conditions as they find them — not with ideals. It is no answer to state that the law provides that such a thing may be done, if in fact it has not been done.

The petition states " that said roll has been completed and verified and same was required by law to be filed on December 1st, 1928, with the Clerk of the Board of Supervisors; " and " that

fifteen days have not elapsed since the actual completion and filing of the aforesaid assessment roll and the verification thereof." On a motion to dismiss, the facts stated in the petition will be viewed in a light most favorable to the petitioner. (*People ex rel. Erie R. R. Co.* v. *Tax Comm.*, 246 N. Y. 322.) We will give no consideration on this appeal to statements of fact and the contents of notices found only in the brief of respondents, without ever having been presented in affidavits to the court below, or printed in the record. We will assume that the roll was not completed and verified until the law required it to be filed — to wit, on December first. Application for the writ was made on December seventh. This was within the fifteen days allowed by section 291 of the Tax Law. If in fact the petitioner was delinquent, that should have been made to appear in affidavits on the motion to dismiss. As the record stands, the application was timely. When the assessors fail to perform a duty required by statute they cannot set the time running by referring to statutes indicating what they should have done. (*People ex rel. American Exchange Nat. Bank* v. *Purdy*, 196 N. Y. 270, 276; *People ex rel. R., W. & O. R. R. Co.* v. *Haupt*, 104 id. 377, 381.)

The order should be reversed on the law and the facts, with ten dollars costs and disbursements, and the matter remitted to Special Term, where the parties may proceed as they are advised.

VAN KIRK, P. J., HINMAN, WHITMYER and HASBROUCK, JJ., concur.

Order reversed on the law and facts, with ten dollars costs and disbursements, and the matter remitted to Special Term where the parties may proceed as they are advised.