THE PEOPLE OF THE STATE OF NEW YORK ex rel. POWOTT CORPORATION, Relator, *v.* WILLIAM H. WOODWORTH, as Assessor of the City of Rochester, New York, THOMAS P. O'LEARY, as Clerk of the City of Rochester, New York, HASKELL H. MARKS, as Treasurer of the City of Rochester, New York, LESTER B. RAPP and Others, as Councilmen of the City of Rochester, New York, Respondents.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. GREATER ROCHESTER PROPERTIES, INC., Relátor, *v.* WILLIAM H. WOODWORTH and Others, Assessors of the City of Rochester, the BOARD OF ASSESSMENT REVIEW and the COUNCIL OF THE CITY OF ROCHESTER, MONROE COUNTY, NEW YORK, Respondents.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. 171 EAST AVE., INC., Relator, *v.* WILLIAM H. WOODWORTH and Others, Assessors of the City of Rochester, the BOARD OF ASSESSMENT REVIEW and the COUNCIL OF THE CITY OF ROCHESTER, MONROE COUNTY, NEW YORK, Respondents.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. BONDED MUNICIPAL CORPORATION, Relator, *v.* WILLIAM H. WOODWORTH, City Assessor of the City of Rochester, Monroe County, New York, HASKELL H. MARKS, City Treasurer of Said City, THOMAS P. O'LEARY, City Clerk, WILLIAM H. EMERSON, Corporation Counsel, LESTER B. RAPP, Mayor, and Others, Constituting the Board of Assessment Review, LESTER B. RAPP and Others, Constituting the Council of Said City, County of Monroe, and BOARD OF SUPERVISORS OF THE COUNTY OF MONROE, Respondents.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. ONTARIO FINANCE CORPORATION, Relator, *v.* LESTER B. RAPP and Others, as Councilmen of the City of Rochester, Monroe County, New York, WILLIAM H. WOODWORTH, as Assessor of Said City, LESTER B. RAPP and Others, Constituting the Board of Assessment Review of Said City, THOMAS P. O'LEARY, as Clerk of Said City, and HASKELL H. MARKS, as Treasurer of Said City, Respondents.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. LAURA S. ELLWANGER, Relator, *v.* LESTER J. RAPP and Others, as Councilmen of the City of Rochester, Monroe County, New York, WILLIAM S. EMERSON and Others, as Members of the Board of Assessment Review, WILLIAM H. WOODWORTH, as Assessor, THOMAS P. O'LEARY, as Clerk, and HASKELL MARKS, as Treasurer, of Said City, Respondents.

Supreme Court, Monroe County, November 22, 1939.

*Abbott, Rippey & Hutchens,* for the relator Powott Corporation.

*David H. Shearer,* for the relators Greater Rochester Properties, Inc., and 171 East Ave., Inc.

*William S. Zielinski,* for the relator Bonded Municipal Corporation.

*Frederick Wiedman,* for the relator Ontario Finance Corporation.

*Harris, Beach, Folger, Bacon & Keating,* for the relator Laura S. Ellwanger.

*William H. Emerson, Corporation Counsel [Andrew L. Gilman* of counsel], for the respondents.

### POWOTT CORPORATION CASE.

VAN VOORHIS, J.   Respondents move to quash the writ upon the grounds that the relator failed to apply to the board of assessment review and to the city council to correct its assessment, and that the petition insufficiently alleges the filing of objections with the city

assessor. Whether application to the board of assessment review and the city council is in each instance a condition precedent to the issuance of the writ involves the application of section 290 of the Tax Law which provides that the petition must show " that the application has been made in due time to the proper officers to correct such assessment." Who are the proper officers to correct the assessment is to be determined in the light of the rule that a writ of certiorari will not ordinarily issue until other remedies provided by statute have been exhausted. (*People ex rel. Uvalde A. P. Co.* v. *Seaman,* 217 N. Y. 70, 76, and cases cited; *People ex rel. Globe Constr. Co., Inc.* v. *Ormond.* 181 App. Div. 242.) The city charter purports to allow appeals to the board of assessment review from decisions by the assessor on complaints presented during the eleven days set apart for the hearing of grievances by him, and to allow the city council to amend the rolls later in connection with the confirmation thereof. Section 1285 of the Civil Practice Act provides that except where otherwise expressly prescribed by statute, review by the courts in the nature of certiorari under article 78 is not allowed where the determination " can be adequately reviewed by an appeal to a court or to some other body or officer." These provisions of the Civil Practice Act apply to writs of certiorari issued under the Tax Law where the latter contains no provision on the subject. (*People ex rel. N. Y. C. R. R. Co.* v. *Gilson,* 239 App. Div. 108; affd., 265 N. Y. 457.) The term " proper officers to correct the assessment," employed by section 290 of the Tax Law, is sufficiently general to be said to be silent upon this particular question. At all events, the rule established by the Civil Practice Act and these decisions creates an analogy which ought to be controlling. As conditions precedent, relator was obliged to apply to the board of assessment review and the city council to review the decision by the assessor upon its complaint filed with him, provided that each body was required to hear the relator, and provided that it was empowered to grant the same relief which is now being sought in the courts.

The apparent powers of the board of assessment review are affected by the inconsistency in the time schedule provided for the board by the city charter. Following grievance days, the assessor has until October first in which to decide upon complaints, whereas appeals to the board of assessment review must be taken not later than September twelfth. The effect is to make the right to appeal conditional upon the time when the assessor renders his decision. That denies the equal protection of the laws. The time during which the assessor may decide is not specifically stated, but an examination of the provisions of the charter shows that it is intended

to allow him until October first, which is the date on or before which he is required to deliver the assessment rolls to the city clerk. It cannot have been intended to compel the assessor to decide upon all complaints during the eleven days in which he is required to hear them while the tax rolls are open for inspection and examination. In *People ex rel. N. Y. & N. J. Tel. Co.* v. *Neff* (15 App. Div. 8, 11, 12; affd., 156 N. Y. 701) it was stated: " It may be that a literal interpretation of the statute indicates that the corrections are to be made by the board [of assessors] during the time the books are to be kept open for examination and correction, which is until the first day of July, when the statute directs that they shall be closed. Those provisions are entitled to a reasonable and practicable construction in view of their purpose. The statute contemplates that any application for correction shall have consideration, and if it relate to personal property that the applicant shall be examined upon oath, and that applications may be made at any time within which the books remain open. (§ 8.) The applications may be numerous, and many may be made on the last day of June. The purpose of the statute cannot be accomplished if the power to consider applications is limited to the time expiring with June. The reasonable intendment of those provisions of the statute is that the books are closed to applications for correction on the first day of July, and that the examination and review, founded upon applications before then made and undisposed of, may follow that time." That is clearly evidenced in the case of the city of Rochester by the power conferred upon the assessor to amend and correct the tax rolls as he deems proper, even by increasing the assessed valuation, " at any time before the verification of the rolls." The rolls are to be verified " when finally completed " (Rochester Charter, § 188 [Local Laws of 1933 (Rochester), No. 9]), and " after the roll is verified it shall be submitted to the city clerk " (Id. § 161, Local Laws of 1932 [Rochester], No. 16) which is to be done " on or before the first day of October in each year * * * where they shall remain for public inspection until they are confirmed (Id. § 180, Local Laws of 1934 [Rochester], No. 11) by the council." These provisions are set forth in paragraphs 1 and 5 of section 255 and section 260 of the city charter. (Laws of 1907, chap. 755, as more particularly amended by the following Local Laws of the city of Rochester: Local Law No. 4 [1925]; Local Laws Nos. 15, 16 [1932]; Local Law No. 9 [1933]; Local Law No. 11 [1934]; Local Law No. 13 [1938].) Their purport is to authorize the assessor to amend and correct the rolls until verification immediately preceding delivery to the city clerk. The natural way for the assessor to announce his decisions is by filing the rolls with the city clerk with any changes entered

thereon, which was done in this case on October first, as shown by the affidavit of the city clerk. The object of providing that thereafter in the city clerk's office they shall again be opened for public inspection is to enable the taxpayers to find out how their objections have been decided. That such is the rationale of the charter is demonstrated by the reasoning of *People ex rel. Albany County Savings Bank* v. *Lewis* (226 App. Div. 182, 185, 186) and *Matter of Long* v. *Jerzewski* (235 id. 441, 442). Undoubtedly the assessor made amendments up to the time that he parted with the roll. To hold that he had no power to do so would upset the established practice.

On the other hand, the time to appeal to the board of assessment review is limited to the twelfth day of September. If the assessor decides a complaint before September twelfth, the taxpayer aggrieved has an opportunity to appeal. On the contrary, if the assessor fails to decide until after that date, as must be the case in the majority of instances, the taxpayer is deprived of review by the board. When the assessor rendered his decision in this case does not appear, unless it be assumed to have been announced in the usual manner by filing the amended roll with the city clerk for public inspection on October first. An affidavit is submitted by the assessor in support of the motion to quash, yet he fails to state that the relator was notified of his decision at any earlier date or in any different manner.

If the assessor's decision was promulgated on October first, the relator could not have appealed from it by September twelfth. Even if the decision of the assessor was announced prior to September twelfth, it would be intolerable to hold that it imposed a condition precedent to court review not applicable to taxpayers whose cases were decided later. In construing a statute (or local law) for the purpose of determining its constitutionality, regard must be had to what can be done under it rather than to what has occurred in a particular instance. (*Stuart* v. *Palmer*, 74 N. Y. 183, 188; *Matter of Richardson*, 247 id. 401, 421.) A charter provision cannot be upheld which permits an appeal to one suitor but denies it to another similarly situated according to the date when the decision is rendered which is under review, which is set by the assessor without regard to the merits or propriety of an appeal in one case rather than in another. Such a power of election in the assessor is without regard to discretion in the legal sense of the word and is unconstitutional. (U. S. Const. art. 14, § 1; N. Y. Const. art. 1, §§ 1, 11, adopted Nov. 8, 1938; *Yick Wo* v. *Hopkins*, 118 U. S. 356.) The rule is " that no person or class of persons " shall be denied the same protection of the laws which is enjoyed by other persons

or other classes in the same place and under like circumstances. (*Missouri* v. *Lewis*, 101 U. S. 22, 31.) The same question in a different context was considered in *Gregonis* v. *Philadelphia & R. Coal & Iron Co.* (235 N. Y. 152, 159) where the court stated: "A selection between resident plaintiffs — opening the courts to one and closing them to the other — would probably run counter to the constitutional provisions of section 1 of the Fourteenth Amendment of the Constitution of the United States, which reads: ' Nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws;' and section 1 of article 1 of the Constitution of the State of New York, which provides: ' No member of this State shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers.' When the Supreme Court says to one resident plaintiff, ' We will not hear your case against a Pennsylvania corporation for a tort committed within that State,' and has the power to say to another resident, ' We will hear your case on like facts,' it comes very near to a violation of these constitutional provisions. (*Robinson* v. *Oceanic Steam Navigation Co.*, 112 N. Y. 315, p. 324.) "

Respondents do not contend that the assessor is required to decide upon complaints before the time has expired in which to apply to the board of assessment review. Their position is that appeals to the board lie from the tentative valuations placed by the assessor upon the roll prior to grievance day. In one of the briefs their counsel states: " No one can deny that the appeal would be good if filed prior to September 12th, whether the assessor had made his [final] decision or not." Such reasoning is fallacious. The board has no power to review tentative assessments. If such a power existed, then it would run concurrently with that of the assessor, and the one whose aid is first invoked would exercise jurisdiction to the exclusion of the other. (*Schuehle* v. *Reiman*, 86 N. Y. 270.) In that event the board could not have acted in this case inasmuch as the petition alleges that the relator applied to the assessor upon grievance day. Application to the assessor is made a condition precedent to redress by the board of assessment review (Rochester Charter, § 263, being § 183, Local Laws of 1925 [Rochester], No. 4; Local Laws of 1938 [Rochester], No. 14), which is inconsistent with concurrent jurisdiction. Neither was it the intention to make the application to the assessor a mere formality, with his power to decide subject to being superseded at any time by the taking of an appeal to the board of assessment review. Curiously enough the period provided by the charter for appealing to the board begins

simultaneously with the hearing of complaints by the assessor. (Rochester Charter, §§ 263, 265, subd. 5.) If appeals can be taken before the assessor's decision upon complaints, that must deprive the assessor of power to act unless there are to be conflicting decisions between the board and the assessor without any procedure for resolving them. It cannot have been intended to enable a taxpayer at will to nullify the proceedings on grievance day and prevent the assessor from rendering a decision, nor was it planned to create instrumentalities with concurrent powers to be exerted by both in the same situation.

The truth is that the jurisdiction of the board of assessment review is designed to be appellate only and not concurrent with that of the assessor. It is expressly provided that " no appeal to the board of assessment review shall be considered unless application for relief shall have been previously presented to the assessor (Rochester Charter, § 265), and the decisions of the assessor which the board is to consider and determine are those final decisions rendered by him upon the applications for relief that were presented during the grievance period.

Appeals to the board of assessment review were attempted by the relators in all the other above-entitled certiorari proceedings, but these were, in any event, premature, if taken before the assessor's decision was announced. Relators appear to have acted from excess caution rather than from any clear idea of how they were to proceed under the charter.

It follows that the explanation made on behalf of the city does not obviate the constitutional objection hereinbefore stated, and that no application to the board of assessment review was a prerequisite in any case to the maintenance of certiorari proceedings. The question being discussed is solely one of law; no suggestion has been made in the arguments that the assessor has used his powers for the purpose of arbitrarily permitting appeals to the board of assessment review in some cases but not in others, and nothing before the court points to such a conclusion. Nor does it appear that any thought of that nature was in the minds of those who prepared this portion of the charter. The point is simply that such a power cannot reside in any public officer without going beyond constitutional limitations. This decision does not determine that any portion of the city charter is unconstitutional except the part relating to the board of assessment review, and, even as to that part, it is not necessary to go farther for present purposes than to hold for the reasons aforesaid that appeals to the board are not conditions precedent to court review. Another *caveat* may be stated. No defect in the powers of the board of assessment review, even where it has attempted to

modify decisions by the assessor, can upset an assessment which is otherwise valid. That is true for the reason that in every instance the assessments are given effect by action of the city council which has power to amend as well as to confirm all portions of the rolls. Assuming that the board of assessment review was without power to modify the rolls, the council had unquestioned power to do so, and the assessments became established in their final form under its authority. (*People ex rel. Western N. Y. & P. R. Co.* v. *Woodbury,* 133 App. Div. 503; affd., 201 N. Y. 532.)

No application to the board of assessment review having been made or required, it was unnecessary to join the board as a party.

The question whether application to the city council to correct the assessment is a condition precedent to the maintenance of this proceeding, is considered in the discussion of the Greater Rochester Properties, Inc., and 171 East Ave., Inc., cases which immediately follow. It is decided in the negative, inasmuch as the council, although empowered to modify the assessed valuation, was under no obligation imposed by law to hear the relator if a complaint had been made.

The form of the allegation in the petition with reference to the statement of objections filed with the assessor is the same as that in the Laura S. Ellwanger case, which is discussed later. It is held that the petition complies with the statute in this respect.

The motion to quash the writ is denied, with ten dollars costs, and the respondents granted twenty days in which to file their return.

GREATER ROCHESTER PROPERTIES, INC., AND 171 EAST AVE., INC., CASES.

The motions to quash in these proceedings are based upon the grounds that the writs are directed to the board of assessment review and the council of the city of Rochester under their official names without enumerating the members; that the petition fails to allege that any objection was made to the city council, and that it insufficiently alleges the filing of objections with the city assessor. It is also contended that the city treasurer is a necessary party. The question relating to the board of assessment review need not be discussed for the reasons stated in the Powott Corporation case. The city council is a necessary party inasmuch as it confirmed the tax rolls. (*People ex rel. N. Y. C. R. R. Co.* v. *Gilson,* 239 App. Div. 108; affd., 265 N. Y. 457; *People ex rel. Union Bag & Paper Corp.* v. *Gilbert,* 143 Misc. 287; *People ex rel. Western N. Y. & P. R. Co.* v. *Woodbury,* 133 App. Div. 503; affd., 201 N. Y. 532; *People ex rel. Benedict* v. *Roe,* 25 App. Div. 107.) Formerly it would not have been enough to join the council under its official name. (*People*

*ex rel. Second Ave. R. R. Co.* v. *Board of Commrs.*, 97 N. Y. 37.) That decision was based on section 2129 of the Code of Civil Procedure which provided that where the writ is brought " to review the determination of a board or body other than a court, if an action would lie against the board or body, in its associate or official name, it must be directed to the board or body, by that name; otherwise it must be directed to the members thereof by their names." The city council is not a corporation. It is not liable to action. Nevertheless section 2129, which became Civil Practice Act, section 1292, was repealed along with all of old article 78 by new article 78 of the Civil Practice Act, enacted by the Laws of 1937, chapter 526. The repeal of these provisions superseded the ruling in *People ex rel. Second Ave. R. R. Co.* v. *Board of Commrs. (supra)*. The provision was not re-enacted that a board or body could not be joined in its associate or official name unless an action would lie against it. No longer is service of process to be made on each member of the board but upon the presiding officer or clerk. (Civ. Prac. Act, § 1289.) The report of the Judicial Council upon the new article of the Civil Practice Act stated, referring specifically to new section 1290: " This section is derived in part from existing §§ 1292, 1301 and 1346. The second sentence of existing 1292 dealing with the name in which the respondent must be designated is omitted as too restrictive." (See 6 Wait N. Y. Practice [4th ed.], 1939 Supp. p. 36.) The intention was to do away with a technical requirement generally productive of injustice. It now becomes the duty of the presiding officer or the clerk of the board or body to notify the other members of the pendency of the proceedings, and the effect is the same as though the names of the members were all set forth in their official capacity, and each had been served. It is not necessary upon this point to determine whether the provisions of the Civil Practice Act or of the Tax Law control the procedure. Section 291 of the Tax Law now provides for service in manner similar to section 1289 of article 78 of the Civil Practice Act. There does not appear to be any distinction in the practice between certiorari under the Tax Law and under the Civil Practice Act in this respect.

The next point concerns whether the petitions are deficient in failing to allege that the relators made their objections to the city council as well as to the assessor. Section 290 of the Tax Law requires that the petition shall show that " the application has been made in due time to the proper officers to correct such assessment." It has been held in the Powott Corporation case that application to the city council is a condition precedent provided that the council was required to hear the relators, but relators cannot

be held to have been required to apply to the council unless it was mandatory upon the council to hear their objections. Time was when the charter of the city provided that the common council before confirming the annual tax rolls "must hear the allegations and complaints of all persons interested who appear." (Rochester Charter, Laws of 1907, chap. 755, § 107.) When the new charter was adopted in 1925 providing for the board of assessment review, that duty on the part of the council was abolished and has never since been restored. (Local Laws of 1925 [Rochester], No. 4, § 180.). At present, before confirmation, the council is empowered to make "such amendments and corrections to the annual tax rolls reported to it, and the taxes, assessments, charges, expenses and other items therein set forth as they deem proper." (Local Law No. 13 [Rochester], § 255, subd. 5.) Counsel for the city argues that such a provision includes the right of taxpayers to be heard, but there is no foundation for such an assumption. The fact that in its notice of the meeting the council announced that it would hear complaints and allegations was a voluntary act upon its part not done pursuant to any statutory mandate. If these relators had been present and objected at the council meeting October 27, 1938, they probably would have been heard out of courtesy. On the other hand, if all aggrieved taxpayers had presented themselves and demanded the same consideration, which counsel for the city contends they were obliged to do under penalty of losing the right to redress in the courts, the council might well have responded that under the charter but five days is permitted in which to confirm the roll, and that time forbade listening to the allegations and complaints of every dissatisfied taxpayer in the city. Under the charter the council is given the right to control its own procedure. (Rochester Charter, § 84.) That is the established prerogative of legislative bodies. (*Armatage* v. *Fisher*, 74 Hun, 167, 171; *Morris* v. *Cashmore*, 253 App. Div. 657, 659; affd., 278 N. Y. 730.) It is provided by the same section of the charter that the public shall not be excluded from council meetings, but that does not allow the public to participate in the proceedings except at the pleasure of the council; otherwise, any organized group could disrupt the orderly proceedings of representative government by monopolizing them to the exclusion of the elected representatives of the people. It follows that in the absence of a duty expressly imposed by law to hear the allegations and complaints of all persons interested who appear, such as was contained in the former charter, the council in its discretion may refrain from hearing such complaints. In no event can application to the council be a condition precedent to a writ of certiorari unless the right to be heard was absolute.

The city treasurer did not participate in making the assessments and became a mere custodian of the rolls. He is not a necessary party. (*People ex rel. U. & D. R. R. Co. v. Smith*, 24 Hun, 66.)

The ground of objection that the petitions fail to allege sufficiently that statements of the objections were filed with the assessor is overruled, as in the Powott Corporation case, for the reasons hereinafter stated in People ex rel. Ellwanger v. Rapp (decided herein).

The motions to quash the writs are denied, with ten dollars costs in each case, and the respondents granted twenty days in which to file their returns.

### BONDED MUNICIPAL CORPORATION CASE.

The grounds of the motion to quash in this proceeding have been disposed of in connection with the foregoing cases and the case of People ex rel. Laura S. Ellwanger, which follows. The motion to quash the writ is denied, with ten dollars costs, and the respondents are granted twenty days in which to file their return.

### ONTARIO FINANCE CORPORATION CASE.

In this proceeding the motion to quash is based upon grounds which have already been considered, and upon the further point that the statement of objections filed with the assessor is insufficiently pleaded, and that there is a failure to allege that the relator is or will be injured by overvaluation of its property. The allegations upon the first subject differ in form from those in the other cases. The petition sets forth a sufficient statement of grounds of objection to the assessor, viz., that the property was assessed at a sum greater than its value and at a higher proportion or ratio of full value than that of other real property in the assessment roll. Although the extent of the overvaluation is not stated, and the instances of inequality are not expressly referred to, objections filed with an assessor need not be expressed with the same particularity which is required of a petition by section 290 of the Tax Law. (*People ex rel. N. Y., O. & W. R. Co. v. Wakeman, No. 3*, 143 App. Div. 816.) Even where the sufficiency of allegations in a petition is involved, such a statement of inequality is adequate inasmuch as the remaining properties on the roll are inferentially named as instances. (*Matter of Allen Square Co. v. Krieger*, 217 App. Div. 123.)

The objection that it is not set forth that the relator is or will be injured by the overvaluation is untenable. It is so alleged, in substance, at the end of paragraph seven. Moreover, under section 290 of the Tax Law, such an allegation is not required in

connection with overvaluation but only as to inequality. If a taxpayer's assessment is excessive by reason of overvaluation, injury is presumed. (*People ex rel. Warren* v. *Carter*, 109 N. Y. 576, 581.) The reason that the statute provides for such an allegation in connection with inequality is therein stated: " Where there is no over-valuation of his own property, it does not follow that the taxpayer will be injured by the under-valuation of some piece of property belonging to another. If all the valuations on the assessment-roll, other than that of the party complaining, were proportionately equal, and also proportionately lower than the valuation of his property, injury to the claimant might, perhaps, be a just inference * * * we think it may be safely said that the petitioner must show a state of facts from which a presumption justly arises that the inequality of which he complains will subject him to the payment of more than his just proportion of the aggregate tax." That is what is intended by the provision that relator must state that he is or will be injured. It is not just an idle formula. (*People ex rel. Warren* v. *Carter*, 109 N. Y. 580, 581.) In the case of the petition now before the court, it is properly alleged that the assessment involved is at a higher proportionate value than that of the other property upon the roll. Where that has been stated, injury to the claimant necessarily follows.

The motion to quash the writ is denied, with ten dollars costs, and the respondents granted twenty days in which to file a return.

## Laura S. Ellwanger Case.

The grounds of the motion in this case are insufficiency of the petition with reference to the objections filed with the assessor, and absence of an allegation specifically stating that the relator is or will be injured by her assessment. The latter ground was disposed of under the Ontario Finance Corporation case. It is essential in a proceeding of this nature to show that application was made to the assessor for a reduction upon the same grounds as those presented by the petition; that is to say, any ground set forth in the petition which is otherwise tenable must have been presented to the assessor during the grievance period. (*People ex rel. Champlin* v. *Gray*, 185 N. Y. 196, 200; *People ex rel. W. S. R. R. Co.* v. *Adams*, 125 id. 471.) That does not mean that the statement filed with the assessor specifying the respects in which the assessment complained of is incorrect must be as detailed as the petition. (*People ex rel. N. Y., O. & W. R. Co.* v. *Wakeman, No. 3*, 143 App. Div. 816.) It means, for example, that if the petition charges that an assessment was erroneous by reason of overvaluation, it must show to the court that the same ground for correction was brought to the consideration of the

assessor in intelligible form. The court will not look into any matter which the assessor had power to correct unless the relator brought it to his attention. That being a condition precedent to the maintenance of the proceeding, compliance must be pleaded. In this case the petition otherwise states good causes of action based upon overvaluation and inequality. Does it allege that these grounds were presented to the assessor? The petition reads: " Your petitioner duly appeared by her representative " before said assessor and protested against said assessment and duly filed a statement under oath specifying the respects in which said assessment complained of was incorrect and duly demanded that said assessment be reduced." In *Matter of City of Albany* v. *Assessors, Town of Coeymans* (233 App. Div. 436), an averment in the petition that the relator made application to the assessors in the manner provided by statute was held to be enough. When the language of the petition in that case is examined, it is found to state that the application to the assessors was " for the correction of said assessment in the particulars aforesaid." That refers to the particulars specified in the petition and assimilates the statement filed with the assessors to the facts stated in the petition. The allegation is as full and complete as though it had repeated everything specified in the petition about overvaluation and inequality. In the Ellwanger case, now before the court, the petition does not expressly say that the assessor was asked to correct the roll on account of the same particulars contained in the petition, but the language used has that effect. When it says that the statement filed on grievance day specified the respects in which the assessment complained of was incorrect, it must be construed to mean the true respects, viz., the respects set forth in the petition, which, for the purpose of the motion, are presumed to be true. The petition is to be construed as a whole. It is a pleading (*Matter of Corwin*, 135 N. Y. 245), and the relator is entitled to the benefit of every reasonable and fair intendment.

Reference has been made to this portion of the opinion as a basis for the holding in the Powott Corporation, Greater Rochester Properties, Inc., 171 East Ave., Inc., and Bonded Municipal Corporation cases. The language in the petitions of Powott Corporation, Greater Rochester Properties, Inc., and 171 East Ave., Inc., is substantially the same as that of the Ellwanger petition. The Bonded Municipal Corporation petition varies slightly from these in that it is stated: " That written application was duly made for the correction of said assessment and valuation of your petitioner's real property and written allegations and objections were duly filed on behalf of your petitioner with the said assessor." The

added statements that the valuation was excessive and not made in accordance with law do not lend any support. Inasmuch as the facts constituting overvaluation and inequality are sufficiently set forth in the petition, it seems that an allegation that written objections and an application for the correction of the assessment were duly made to the assessor must mean that the true grounds of objection were presented as they are alleged in the petition. Whether upon the trial of these proceedings the relators will be able to sustain these allegations with proof that proper statements of objections were filed is not involved upon these motions In *Matter of City of Albany* v. *Assessors, Town of Coeymans (supra)* the writ was dismissed upon motion on uncontradicted affidavits by respondents that no application had been made to the assessors notwithstanding the allegation in the petition to that effect. The circumstance that no such affidavit has been produced by the respondents in any of the cases now before the court, either showing that no statement was filed with the assessor, or else setting forth *in extenso* a statement claimed to be defective so that the court can pass upon its validity, is an additional reason for construing the petitions liberally.

The motion to quash the writ is denied, with ten dollars costs, and the respondents granted twenty days in which to file their return.

The allegations of illegality in some of the petitions, while referred to in the notices of motion, have been little discussed upon the argument and in the briefs, and, with the exception of the Powott Corporation case, where the alleged illegalities are specified, the use of the term is not construed to denote anything other than overvaluation or inequality.

Questions have been raised by the respondents in some of the proceedings concerning the scope of the writs. It is said that some of them require more to be returned than is called for by law. Most of respondents' objections to the form of the writs are covered by this decision. If any remain, they may be disposed of when the orders are signed.